UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AMIN KHOURY,<br><br>Defendant | Criminal No. 20cr10177<br><br>Violations:<br><br>Count One: Conspiracy to Commit Mail Fraud and Honest Services Mail Fraud and Bribery Concerning Programs Receiving Federal Funds (18 U.S.C. § 371)<br><br>Count Two: Bribery Concerning Programs Receiving Federal Funds (18 U.S.C. § 666(a)(2))<br><br>Forfeiture Allegations: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1. The defendant, AMIN KHOURY ("KHOURY"), was a resident of Palm Beach, Florida and Mashpee, Massachusetts.

2. Georgetown University ("Georgetown") was a highly selective private university located in Washington, D.C.

3. Georgetown received federal benefits in excess of $10,000 annually under federal programs involving grants, contracts, subsidies and other forms of federal assistance.

4. Gordon Ernst ("Ernst") was a resident of Chevy Chase, Maryland and Falmouth, Massachusetts. Until January 2018, Ernst was employed as the head coach of men's and women's

tennis at Georgetown. In that capacity, Ernst was an agent of Georgetown and he owed a duty of honest and faithful services to Georgetown.

5. Tennis Recruiter 1 was a resident of the District of Massachusetts.

General Background on Athletic Recruitment and the College Admissions Process

6. The athletic teams of Georgetown compete in most sports at the Division I level, the highest level of intercollegiate athletics sanctioned by the National Collegiate Athletic Association ("NCAA").

7. Georgetown, like many selective colleges and universities in the United States, recruits students with demonstrated athletic abilities, and applies different criteria when evaluating applications from such students, with the expectation that recruited athletes will be contributing members of the university's athletic teams once enrolled. The admissions office at Georgetown allots a set number of admissions slots to each head coach of a sport for that coach's recruited athletes. The admissions prospects of recruited athletes are substantially higher than those of non-recruited athletes with similar grades and standardized test scores.

Objects and Purpose of the Conspiracy

8. The principal objects of the conspiracy were to commit mail fraud, honest services mail fraud and federal programs bribery, in violation of Title 18, United States Code, Sections 1341, 1346 and 666(a)(2), respectively, by bribing Ernst to fraudulently designate KHOURY's daughter as a tennis recruit. The principal purpose of the conspiracy was to facilitate the admission of KHOURY's daughter to Georgetown.

Manner and Means of the Conspiracy

9. Among the manner and means by which KHOURY, Ernst and co-conspirators known and unknown to the Grand Jury carried out the conspiracy were the following:

    a. Paying and receiving cash bribes; and

    b. Designating KHOURY's daughter as a purported tennis recruit, with little or no regard for her athletic ability.

### Overt Acts

10. On various dates between in or about May 2014 and in or about 2016, KHOURY, Ernst and Tennis Recruiter 1 committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

    a. In or about May 2014, KHOURY agreed to pay Ernst a bribe in the amount of approximately $200,000 in exchange for designating KHOURY's daughter as a purported recruit to the Georgetown tennis team with little or no regard for her athletic ability.

    b. Ernst agreed to pay Tennis Recruiter 1 $10,000 to act as a middle-man in the transaction—with the understanding that KHOURY would pay Tennis Recruiter 1 additional compensation.

    c. On or about July 21, 2014, KHOURY emailed the director of college counseling at his daughter's high school located in the District of Massachusetts, telling him: "I had another opportunity to chat with Gordie [Ernst] through some mutual friends and the fact that he was visiting the Massachusetts area. We had a good chat. I again reiterated that [my daughter] had the raw ability to lead the team if she was 'red-shirted' and if Gordo gave her the coaching that is required to advance a talented but raw kid into a varsity leader at the Georgetown level of [competition]. He again was fully in agreement and indicated he is willing to energetically recruit her onto the squad."

d. On or about October 13, 2014, KHOURY's daughter submitted her application to Georgetown. A letter of recommendation accompanying her application stated that KHOURY's daughter played "#6 singles and third doubles," which is below the level of a typical Georgetown tennis recruit.

e. On or about October 16, 2014, KHOURY emailed the director of college counseling at his daughter's high school, telling him: "Yes we have been in touch with Gordie [Ernst]. It's looking really good. He wants the application ASAP after quarter grades. I hope all is well with you and your family and look forward to seeing you soon."

f. On or about October 19, 2014, Ernst emailed a Georgetown admissions officer and identified KHOURY's daughter as a potential tennis recruit. Ernst falsely suggested that he had identified KHOURY's daughter after he was approached by the director of college counseling at her high school. In fact, Ernst had previously agreed to designate KHOURY's daughter as a recruit in exchange for a bribe—a fact that he did not disclose in the email.

g. On or about October 30, 2014, Ernst forwarded KHOURY's daughter's grades and standardized test scores to the same Georgetown admissions officer.

h. On or about November 15, 2014, KHOURY sent a text message to Ernst asking if his daughter should proceed with her Georgetown alumni interview. Ernst told KHOURY that his daughter should proceed with the interview and should tell the interviewer that "Gtown is where I want to be and," and, falsely, that she "really want[ed] to be part of their tennis team."

4

i. On or about December 9, 2014, Georgetown sent KHOURY's daughter a letter by United States mail noting that the Committee on Admissions had conducted an initial review of her application at Ernst's request, and had rated her admission as "likely." The letter explained that candidates rated "likely" have a greater than 95 percent chance of being admitted to Georgetown and that KHOURY's daughter would receive a final decision by April 1.

j. On or about May 8, 2015, after his daughter was formally accepted to Georgetown, KHOURY withdrew $200,000 in cash from a bank in Florida and flew to Massachusetts.

k. On or about May 15, 2015, KHOURY met with Tennis Recruiter 1 at KHOURY's home in the District of Massachusetts. KHOURY gave Tennis Recruiter 1 approximately $180,000 in cash with the understanding that Tennis Recruiter 1 would give the money to Ernst. KHOURY also gave Tennis Recruiter 1 an additional $20,000 in cash for himself.

l. Tennis Recruiter 1 drove to Falmouth, Massachusetts where he met Ernst's spouse. There, Tennis Recruiter 1 gave Ernst's spouse $170,000 in cash, while keeping an additional $10,000 for himself.

m. Tennis Recruiter 1 thereafter drove Ernst's spouse to a Bank of America in Falmouth, Massachusetts, where she rented a safe deposit box.

n. On or about October 28, 2015, Tennis Recruiter 1 texted KHOURY asking for an "update" for Ernst concerning the money KHOURY still owed Ernst.

o. On or about March 14, 2016, Tennis Recruiter 1 texted KHOURY to ask whether he would "be in DC this spring to square things away with Gord?" KHOURY replied: "Late spring. . . .".

p. On or about June 23, 2016, Tennis Recruiter 1 texted KHOURY as follows: "Gord is asking again. When can you square up with him?" KHOURY replied: "Have him give me a ring."

q. On or about July 15, 2016, Ernst texted KHOURY, asking: "Amo, let's square up soon. My dad [is] very sick and I need to chip in and help my mom." KHOURY responded: "Give me a few weeks and I can take another bite out of it. I'll say a prayer for your dad!!!"

r. In a text exchange on or about July 27, 2016, Ernst and KHOURY made plans to meet at a coffee shop in Mashpee, Massachusetts. KHOURY told Ernst he could "take a small bite today" but "not as big as the last."

## COUNT ONE
### Conspiracy to Commit Mail Fraud and Honest Services Mail Fraud and Bribery Concerning Programs Receiving Federal Funds
(18 U.S.C. § 371)

The Grand Jury charges:

11. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 10 of this Indictment.

12. From in or about May 2014 through in or about 2016, in the District of Massachusetts and elsewhere, the defendant,

### AMIN KHOURY,

conspired with others known and unknown to the Grand Jury to commit the following offenses:

a. mail fraud and honest services mail fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property, to wit, admission to Georgetown, by means of materially false and fraudulent pretenses, representations and promises, and to deprive Georgetown of its right to the honest and faithful services of its employee, Gordon Ernst, through bribes and kickbacks, did, for the purpose of executing and attempting to execute the scheme, deposit and cause to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, in violation of Title 18, United States Code, Sections 1341 and 1346; and,

b. federal programs bribery, that is, to corruptly give, offer and agree to give anything of value to any person, with intent to influence and reward an agent of an organization, namely, Gordon Ernst, an agent of Georgetown, in connection with any business, transaction and series of transactions of such organization involving anything of value of $5,000 or more, where such organization received benefits in excess of $10,000 under Federal programs involving grants, contracts, subsidies, loan guarantees, insurance and

other forms of Federal assistance in any one-year period, in violation of Title 18, United States Code, Section 666(a)(2).

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### Bribery Concerning Programs Receiving Federal Funds
### (18 U.S.C. § 666(a)(2))

The Grand Jury further charges:

13. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 10 of this Indictment.

14. From in or about May 2014 through in or about 2016, in the District of Massachusetts, and elsewhere, the defendant,

### AMIN KHOURY,

corruptly gave, offered and agreed to give anything of value to any person, with intent to influence and reward an agent of an organization, namely Gordon Ernst, an agent of Georgetown, in connection with any business, transaction and series of transactions of such organization involving anything of value of $5,000 or more, where such organization received benefits in excess of $10,000 under Federal programs involving grants, contracts, subsidies, loan guarantees, insurance and other forms of Federal assistance in any one-year period.

All in violation of Title 18, United States Code, Section 666(a)(2).

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

15. Upon conviction of the offense in violation of Title 18, United States Code, Section 371, as set forth in Count 1 of this Indictment, and the offense in violation of Title 18, United States Code, Section 666(a)(2), as set forth in Count 2 of this Indictment, the defendant,

AMIN KHOURY,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

16. If any of the property described in Paragraph 15 above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 15 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
ERIC S. ROSEN
JUSTIN D. O'CONNELL
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: September 1, 2020
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

11