IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 20-10177-PBS |
| | ) | |
| AMIN KHOURY, | ) | |
| | ) | |
| Defendant | ) | |

**GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE OR OTHERWISE LIMIT IRRELEVANT EVIDENCE CONCERNING GEORGETOWN FUNDRAISING AND UNRELATED DONORS**

The government moves *in limine* to preclude the defendant from introducing evidence regarding the fundraising practices of Georgetown University ("Georgetown") and unrelated donors, including donors who contributed to Georgetown in connection with other applicants, who had no involvement with the defendant or his alleged co-conspirators. The defendant is trying to introduce this evidence through three primary avenues: (1) statements in emails from/to individuals *other than* the defendant discussing Georgetown fundraising; (2) witness testimony of one or more current or former Georgetown employees discussing Georgetown fundraising; and (3) testimony of a proposed "expert" describing fundraising practices at universities in general. The Court should not allow this evidence at trial because it is irrelevant and would cause unnecessary delay and confusion of the issues.[1]

---

[1] In many instances this evidence also constitutes inadmissible hearsay. The government has addressed various hearsay issues in the defendant's proposed exhibits in a separate motion. *See* Government Motion *in Limine* to Preclude Hearsay Evidence.

I.   Case Background

The defendant is charged in a two-count Indictment. Count One, under 18 U.S.C. § 371, charges conspiracy to commit mail fraud, honest services mail fraud, and federal programs bribery. Count Two, under 18 U.S.C. § 666(a)(2), charges a substantive count of federal programs bribery. The essential questions the jury must answer at trial are therefore (1) whether the defendant entered into a conspiracy to commit a fraud, and (2) whether the defendant paid a bribe to an agent of Georgetown University.

The government has alleged that the defendant agreed to pay the Georgetown Tennis Coach (Gordon Ernst) a cash bribe through a middleman so that Ernst would identify Khoury's daughter as a tennis recruit to Georgetown Admissions without regard for her tennis abilities (or lack thereof).[2] After Ernst identified the defendant's daughter as a tennis recruit, Georgetown Admissions informed the defendant's daughter that she had a "95%" likelihood of being admitted. Thereafter, the defendant made good on his promise to Ernst, paying a bribe, in cash, of approximately $200,000. The cash was delivered to Ernst through the middleman, who kept a portion as a fee for participating in the scheme.

The defendant's daughter was subsequently accepted to Georgetown, where she never participated in the tennis program. Admissions was unaware that the defendant had agreed to pay a bribe to Ernst when considering the daughter's application or Ernst's identification of the

---

[2] The defendant, Ernst, and the middleman have known each other for decades, having all attended Brown University and played on its tennis team. Ernst pleaded guilty to accepting multiple bribes, including from Amin Khoury, and awaits sentencing. *See United States v. Ernst et al*, 19-CR-10081-IT. The middleman received an order of immunity and testified before the Grand Jury, and will also be a government witness at trial.

daughter as a legitimate tennis recruit. There is also no evidence that Ernst passed any portion of the bribe payment on to Georgetown or the Georgetown tennis team.

There is no evidence that the defendant made any donations to Georgetown, or interacted with Georgetown fundraising, prior to or during the pendency of his daughter's application to Georgetown. Subsequent to her admission, in 2018, the defendant made a single $1,500 donation to the Georgetown chaplaincy.

## II. Defendant's Proposed Evidence

This motion addresses three categories of the defendant's proposed evidence, all of which relate to Georgetown fundraising. *First*, the defendant has proposed 274 exhibits, at least 70 of which concern athletics fundraising generally and tennis fundraising specifically, third party donors who were *not* part of the charged conspiracy and who have *no* relationship with the defendant, or Ernst's use of recruitment slots on unrelated applicants.[3] These exhibits tend to show that Georgetown conducts fundraising and receives donations, and in certain cases discusses fundraising in connection with prospective applicants. *Second*, the defendant's witness list identifies one or more witnesses who the government anticipates will be called to testify about Georgetown's fundraising practices and the role of donations in admissions.[4] These witness(es) had no involvement in, and have no knowledge of, the charged conduct in this case. *Third*, the defendant has identified an "expert" witness (Kent John Chabotar, Ph.D.) who will testify about fundraising and its role in admissions in higher education generally. As explained below, this

---

[3] *See, e.g.*, Defense Exhibits 1-8, 10, 12, 14-25, 27-29, 33, 35-38, 40-41, 43-49, 51-69, 215-222.

[4] For example, the defendant's witness list identifies Brenda Smith, who previously worked at Georgetown in development.

3

expansive evidence—the exhibits, lay testimony, and expert testimony—is all irrelevant, unnecessarily time-consuming, and confusing.

    III.    Argument

        a.  *Georgetown Fundraising Evidence Is Irrelevant*

The defendant is trying to make this trial about an irrelevant issue: how Georgetown conducts fundraising and the extent to which donations to Georgetown impact admissions decisions. Evidence suggesting that Georgetown conducts fundraising has no bearing on any fact of consequence in the defendant's trial. Fed. R. Evid. 401 (evidence is irrelevant unless it makes "a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action"); *United States v. Maxwell*, 254 F.3d 21, 26 (1st Cir. 2001) (a defendant's right to a defense "does not include the right to present irrelevant evidence"). Most notably, the evidence has no bearing on whether the defendant entered into a conspiracy to commit a fraud, paid a cash bribe to Ernst, and/or the defendant's state of mind in conducting those activities. *See United States v. Smith*, 940 F.2d 710, 713 (1st Cir. 1998) (relevant evidence must relate to the elements of the offense or applicable defenses).

Even if the defendant could proffer some evidence that he was personally involved in Georgetown fundraising in connection with his daughter's admission—which he cannot—the defendant's proposed exhibits and witness testimony on the topic of university fundraising would still be irrelevant. Indeed, the emails the defendant proposed as exhibits discussing Georgetown fundraising cannot be relevant to the defendant's state of mind because the defendant did not receive or see those emails prior to or during his daughter's application process. Similarly, lay testimony about Georgetown fundraising, or expert testimony about fundraising in general, cannot be relevant to the defendant's state of mind because none of these witnesses ever conveyed that

4

information to the defendant prior to or during his daughter's application process (or prior to his cash payment of approximately $200,000 to Ernst).

Absent any impact on the defendant's state of mind or actions, the only purpose of this evidence is to deride Georgetown's fundraising efforts before the jury. But the propriety of Georgetown fundraising is irrelevant. *See, e.g.*, *United States v. Sans*, 731 F.2d 1521, 1530 (11th Cir. 1984) (the defendant's knowledge of other individuals alleged wrongdoing "was not relevant to whether [the defendant] acted knowingly"). The First Circuit's decision in *United States v. Brandon* is instructive. 17 F.3d 409 (1st Cir. 1994). In that case, the court affirmed the exclusion of evidence offered by defendants charged with conspiring to commit bank fraud. *Id.* at 418. The excluded evidence suggested that, in other situations and sometimes even customarily, the victim bank and other banks offered 100 percent financing without requiring down payments at all. *Id.* at 443. In affirming the exclusion of this evidence, the First Circuit explained, "for the [100 percent financing] evidence to be relevant, there must be some reason to believe that 100% financing, or no down payment financing, is customarily provided in conjunction with paperwork showing fake down payments. A no down payment custom does not establish a fake down payment custom." *Id.* at 444. The court saw the true purpose of this evidence: "What defendants were really trying to show is that the bank or its officials were themselves perpetrating some sort of fraud and the defendants were unwittingly caught up in it. . . . This formulation, however, obscures the real issue: if Bay Loan intended to provide 100% financing, or if defendants thought down payments were waived, why did they have to take actions to falsify down payments?" *Id.* at 445.

So too, here. Even if the defendant could somehow paint Georgetown as corrupt, that does not make it more or less likely that *the defendant* agreed to join in a conspiracy or bribed a Georgetown employee to get his daughter listed as a fake tennis recruit. The defendant's actions

5

and intentions and the conspiracy charged are the appropriate subject matter of this trial, and courts in the First Circuit and elsewhere have routinely concluded that "defendants in fraud cases may not adopt the 'blame the victim' theme in attacking the government's case." *United States v. June*, No. 10-CR-30021-MAP, 2012 WL 245243, at *2 (D. Mass. Jan. 25, 2012) (rejecting attempt to show victim's "general lending policies were so slipshod or so venal that [d]efendant's alleged lies about his income and assets were of no moment"); *United States v. Callipari*, 368 F.3d 22, 36 (1st Cir. 2004) (rejecting "blame the victim" defense), *vacated on other grounds*, 543 U.S. 1098 (2005); *United States v. Golfo*, 2020 WL 2513445, at *4-5 (E.D.N.Y. May 15, 2020) (rejecting "blame the victim" defense).

Notably, Judge Gorton recently addressed essentially the same issue in a similar case, *United States v. Abdelaziz*, 19-cr-10080-NMG, and agreed with the government's view:

> As a preliminary matter, counsel should understand that this trial is not going to be about the general admissions policy of the University of California or the method it uses to admit students. USC is not on trial here, and I will not have this case devolve into multiple side trials. Unless there's evidence that a defendant was misinformed with respect to the admission policy of the subject university and/or knew that USC admitted a specific unqualified student whose parent made a large donation to the school before that defendant entered into the alleged conspiracy with Singer, evidence of what other unrelated students and parents did has no bearing on the defendants' state of mind and, thus, is irrelevant to the requisite scienter that the government must prove in this case.

*Id.*, 8/18/2021 Pre-Trial Conf. Tr. at 6:10-22; *see also id.* at 19:20-22 (holding that as to evidence of university operations or admissions, unless something is "known to the subject defendant, it is irrelevant and thus inadmissible"); *id.* at 18:13-20 (the Court agreeing that "evidence about specific students who are not on trial here should not come in unless the defendants can prove that they were aware of it and it had an effect on their good faith and

their intent.").[5]  This session of the Court should adopt the same position in this case and not allow the trial to devolve into "side trials" about Georgetown fundraising or its role in admissions.

### b. Any Probative Value Is Outweighed by Other Considerations

Even if the Court is persuaded that evidence of Georgetown fundraising has some probative value, that probative value is substantially outweighed by the unnecessary delay and confusion of the issues it will cause.  Fed. R. Evid. 403.  The unnecessary delay will be significant: the defendant wants to introduce approximately 70 exhibits on the topic of Georgetown fundraising and recruitment of unrelated third parties, call at least one lay witness to describe Georgetown fundraising, and call an "expert" witness on the topic of fundraising at universities.  In addition to being time-consuming, this evidence will certainly confuse the issues, potentially inflaming the jury by improperly suggesting that Georgetown cannot be a "real victim" because of the alleged importance Georgetown places on fundraising or because Georgetown may consider legal fundraising efforts during the admissions process.  *Old Chief v. United States*, 519 U.S. 172, 180 (1997)) ("'Unfair prejudice' within [the Rule 403] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." (quoting Advisory Committee's Notes on Fed. R. Evid. 403)).  The First Circuit has repeatedly made clear that these concerns warrant the exclusion of evidence.  *See, e.g.*, *United States v.*

---

[5] Having excluded this evidence, the Court did indicate that it *may* allow some limited expert testimony from Mr. Chabotar, the same expert proposed by defense in this case, on the topic of "how higher education . . . operates." *Id.* at 22:1-8.  The Court noted that the information may "not necessarily [be] obvious to a layperson," but also emphasized that it would "not permit a sideshow on this subject." *Id.*  However, Mr. Chabotar was never called by defense such that the Court never provided a final admissibility ruling.

*George*, 761 F.3d 42, 57 (1st Cir. 2014) ("[T]he judge could have ended up with a mini-trial about a side issue – [a third party's] innocence of charges not made – that might have confused the jury."); *see also United States v. Taylor*, 848 F.3d 476, 485 (1st Cir. 2017) (excluding defense's attempt to introduce government's letter identifying an unindicted co-conspirator, which "could lead to a mini-trial about a side issue – to wit, why [the co-conspirator] was unindicted – so the risk of confusing the issues substantially outweighed the Letter's probative value"); *United States v. DeCologero*, 530 F.3d 36, 60 (1st Cir. 2008) (excluding evidence due to risk of mini-trials); *United States v. Thomas*, 467 F.3d 49, 56 (1st Cir. 2006) (Woodlock, J.) ("Here, in refusing to allow a trial within a trial on a collateral matter, the trial court struck the proper balance.").

## CONCLUSION

For the foregoing reasons, the Court should preclude the defendants from introducing exhibits or other evidence, including lay and expert testimony, about Georgetown fundraising, unrelated third-party donors, and unrelated tennis recruits.

    Respectfully submitted,

    RACHAEL S. ROLLINS
    United States Attorney

By: */s/ Christopher J. Markham*
    CHRISTOPHER J. MARKHAM
    KRISTEN A. KEARNEY
    Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: March 25, 2022                                     *s/ Christopher J. Markham*
                                                                              Christopher J. Markham
                                                                              Assistant United States Attorney