UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>AMIN KHOURY,<br><br>            Defendant | Case No. 20-cr-10177-PBS |

### DEFENDANT AMIN KHOURY'S MEMORANDUM IN SUPPORT OF HIS MOTION IN LIMINE TO PRECLUDE ADMISSION OF ALLEGED CO-CONSPIRATOR STATEMENTS

Pursuant to Federal Rules of Evidence 801(d)(2)(E) and 403, and the Sixth Amendment to the United States Constitution, Defendant Amin Khoury moves for an order precluding government witness, the "Tennis Recruiter" from testifying at trial about an out-of-court statement allegedly made to him by Gordon Ernst, a defendant in a separate case who will not be testifying at Mr. Khoury's trial. Because there is no evidence that would support admission of the out-of-court statement under Rule 801(d)(2)(E) or under any other rule, Mr. Khoury respectfully submits that a pretrial determination of admissibility is prudent under the circumstances of this case, as more fully described below. *See generally United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977).

### INTRODUCTION

In the indictment against Mr. Khoury, the government alleges that Mr. Khoury conspired to commit (a) mail fraud, (b) honest services mail fraud, and (c) bribery concerning programs receiving federal funds (Count One), and that he committed substantive bribery concerning

1

programs receiving federal funds (Count Two), by paying his former college tennis teammate and then Georgetown University tennis coach, Gordon Ernst, to designate Mr. Khoury's daughter as a tennis recruit and facilitate her admission to Georgetown.

Ernst is not on the government's witness list and is not expected to testify at trial. Instead, the government intends to call the Tennis Recruiter, another former college teammate of Mr. Khoury and Ernst, and elicit from the Tennis Recruiter a statement allegedly made to him by Mr. Ernst in May 2014, after Khoury, Ernst, and the Tennis Recruiter attended a Brown University 25th Reunion dinner. Although Ernst and the Tennis Recruiter remained friends after college and spoke on a weekly basis, Mr. Khoury had not seen or heard from Ernst or the Tennis Recruiter for more than a decade.

The Tennis Recruiter testified during the grand jury proceedings that as the Tennis Recruiter and Ernst walked back to their hotel room from the dinner, Ernst "mentioned" to the Tennis Recruiter that Ernst "was likely going to do a deal with Amin to help his daughter," more specifically:

> Q. Why don't you explain to the Grand Jury – Jurors how that happened.
>
> A. . . . Gordie [Ernst] and I were sharing a hotel room and when we were walking back to the hotel that night, he mentioned that he was likely going to do a deal with Amin to help his daughter.[1]

This statement must be excluded for three reasons:

First, there is no evidence that any conspiracy existed when the statement was made, so the statement is hearsay and inadmissible under Rule 801(d)(2)(E).

---

[1] This testimony appears at page 14 of the Tennis Recruiter's grand jury testimony, which the government has. Undersigned can separately file the grand jury transcript under seal if the Court wishes to read it.

2

Second, the statement is inadmissible under *Bourjaily v. United States*, 483 U.S. 171 (1987), because there is no extrinsic evidence, outside of the statement itself, of any conspiracy. And in any event, the statement merely manifests Ernst's own subjective aspirations rather than a meeting of the minds between Ernst, the Tennis Recruiter, and Mr. Khoury.

Finally, the statement is inadmissible under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice, especially because Ernst is not testifying at trial, so Mr. Khoury will not have an opportunity to cross-examine him.

## ARGUMENT

### A. Ernst's Alleged Statement to the Tennis Recruiter at the Reunion Dinner Is Not a Co-Conspirator Statement Under Fed. R. Evid. 801(d)(2)(E).

The government bears the burden of establishing four elements by a preponderance of the evidence in order for an out-of-court statement to be admitted as non-hearsay under Fed. R. Evid. 801(d)(2)(E): first, a conspiracy must have existed; second, the defendant must have been a member of the conspiracy; third, the declarant must have been a member of the conspiracy; and fourth, the declarant's out-of-court statement must have been made "during and in furtherance of" the conspiracy. *Bourjaily,* 483 U.S. at, 17576; *United States v. Sepulveda*, 15 F.3d 1161, 1180 (1st Cir. 1993) (the party invoking Rule 801(d)(2)(E) "must show by a preponderance of the evidence that a conspiracy embracing both the declarant and the defendant existed, and that the declarant uttered the statement during and in furtherance of the conspiracy").

The government's evidence fails this test. First, there are 101 documents on the government's exhibit list and nine witnesses on the government's witness list, and none establish that a conspiracy existed when Ernst made the statement to the Tennis Recruiter. Second, even if the government expanded its exhibits list, none of the nearly 200,000 documents made available in discovery establish the existence of a conspiracy. Finally, even Ernst's supposed statement

demonstrates that no conspiracy existed: By allegedly saying that "*he was likely going to do a deal with Amin*," Ernst was speculating ("*likely*") about a future event ("*going to do*") and was expressing his own aspirations ("*he* was…going to do a deal"), not Mr. Khoury's agreement. Indeed, Ernst's statement to the Tennis Recruiter establishes conclusively that there was no meeting of the minds between Ernst and Mr. Khoury, and therefore no conspiracy.

Because there is no evidence that a conspiracy existed, much less that Mr. Khoury was a part of it, Ernst's out-of-court statement is not a "co-conspirator statement" under Rule 801(d)(2)(E).

### B. The Government Cannot Rely on the Out-of-Court Statement Alone to Establish the Existence of the Conspiracy.

The preponderance of evidence required for the admission of an out-of-court statement under Rule 801(d)(2)(E) consists of more than the weight of the statement itself. *See Sepulveda*, 15 F.3d at 1181-82 (citing *Bourjaily,* 483 U.S. at 185 & n. 2). Thus, the First Circuit has held that a co-conspirator's statement, standing alone, is insufficient to meet the preponderance standard of Rule 801(d)(2)(E). *Sepulveda*, 15 F.3d at 1181-82. Though the district court may consider a statement's contents and the circumstances attending its utterance when gauging the statement's reliability, admitting the statement in evidence requires extrinsic proof of the existence of a conspiracy and of the declarant's and defendant's involvement in it. *Id.* (citing *United States v. Gomez–Pabon*, 911 F.2d 847, 856 n. 3 (1st Cir. 1990), *cert. denied*, 498 U.S. 1074 (1991)).

Accordingly, in order for Ernst's statement that "he was likely going to do a deal with Amin" to be admissible against Mr. Khoury at trial pursuant to Fed. R. Civ. P. 801(d)(2)(E), the government must first offer extrinsic evidence—independent of the statement itself—that a conspiracy existed *when Ernst made the out-of-court statement,* and that the out-of-court statement was made "during and in furtherance of" that conspiracy. Because the lack of evidence here

4

demonstrates that the government will be unable to carry its burden, the Court should preclude the government from eliciting Ernst's alleged statement during the Tennis Recruiter's testimony at trial.

### C. Ernst's Statement Was Not Made "In Furtherance" of Any Conspiracy.

Because no conspiracy existed, it is impossible for Ernst's statements to have been made "in furtherance" of a conspiracy.

But even if the "in furtherance" requirement was at play here, Ernst's statement is still inadmissible because the statement was nothing more than idle chatter or a casual remark that Ernst "mentioned" to the Tennis Recruiter as they walked back to the hotel. As the Tennis Recruiter himself described it to the grand jury in the transcript referenced above, "Gordie and I were sharing a hotel room and when we were walking back to the hotel that night, *he mentioned* that he was likely going to do a deal with Amin to help his daughter." Transcript, Grand Jury Testimony p. 14: 9-12.  Such idle chatter or casual comments do not advance the goals of a conspiracy and therefore do not meet the "in furtherance" requirement of Rule 801(d)(2)(E). *See United States v. Snider*, 720 F.2d 985, 992 (8th Cir. 1983) (comments that merely inform the listener about the declarant's activities are not "in furtherance" of a conspiracy); *United States v. Piper*, 298 F.3d 47, 54 (1st Cir. 2002) ("[g]enerally speaking . . . a coconspirator's statement is considered to be in furtherance of the conspiracy" if "it tends to promote one or more of the objects of the conspiracy" or "'advance the goals of the conspiracy in some way'" (citation omitted)).

### D. Ernst's Statement Should Be Excluded Because It Is Unfairly Prejudicial to Mr. Khoury.

Ernst's statement should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, particularly because Ernst—the declarant—is not listed as a government witness, and Mr. Khoury will not have an opportunity to cross-examine

him during the government's case in chief. *See Crawford v. Washington*, 541 U.S. 36 (2004); *United States v. Ackerly*, 981 F.3d 70 (1st Cir. 2020).

Under the Federal Rules of Evidence, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice 'speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *United States v. García-Sierra*, 994 F.3d 17, 32-33 (1st Cir. 2021) (quoting *United States v. DiRosa*, 761 F.3d 144, 153 (1st Cir. 2014)). As the Committee's Notes to Rule 403 explain, "'[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Notes on Fed. R. Evid. 403. Such unfair grounds surely include Ernst's out-of-court statement, not subject to cross-examination, alluding to a supposed conspiracy of which there is no independent or extrinsic proof. Absent such proof, this statement should not be permitted at trial.

### E. The Court Should Rule on the Admissibility of the Statement Pre-Trial.

Ruling on the admissibility of Ernst's out-of-court statement before the Tennis Recruiter testifies is prudent in this case because there is no apparent evidentiary basis to provisionally admit the statement as a co-conspirator statement.

It is widely recognized that if hearsay statements are conditionally admitted based on incomplete evidence, limiting jury instructions may not be sufficient. *See, e.g., United States v.*

*McNatt,* 842 F.2d 564, 566 (1st Cir. 1988) ("The danger of prejudicial spillover is great when coconspirator statements are deemed inadmissible after being presented before the jury"); *United States v. Ciampagli*a, 628 F.2d 632, 638 (1st Cir. 1980) (where hearsay evidence does not meet *Petrozziello'*s standards, courts must "declare a mistrial if the instruction will not suffice to cure any prejudice"); *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969) (if the government fails to prove the defendant's participation in the conspiracy, "the judge must instruct the jury to disregard hearsay or, when this was so large a proportion of the proof as to render a cautionary instruction of doubtful utility . . . declare a mistrial if the defendant asks for it").

As far as the undersigned have been able to determine from all the discovery in the case, there is no evidence the government can offer to meet the requirements of Rule 801(d)(2)(E). Under the circumstances of this case, Mr. Khoury respectfully requests that the Court rule on the admissibility of Ernst's alleged statement before the Tennis Recruiter takes the stand.

Respectfully submitted,

AMIN KHOURY

By his attorneys,

*/s/ Eóin P. Beirne*
R. Robert Popeo (BBO #403360)
Mark E. Robinson (BBO #423080)
Cory S. Flashner (BBO #629205)
Eóin P. Beirne (BBO #660885)
Mathilda S. McGee-Tubb (BBO #687434)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
 (617) 542-6000
RRPopeo@mintz.com
MERobinson@mintz.com
CSFlashner@mintz.com
EPBeirne@mintz.com
Dated: March 25, 2022                    MSMcGee-Tubb@mintz.com

7

## **CERTIFICATE OF SERVICE**

       I, Eóin P. Beirne, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 25, 2022.

                                       /s/ *Eóin P. Beirne*
                                       Eóin P. Beirne