IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Criminal No. 20-10177-PBS |
| ) | |
| AMIN KHOURY, ) | [Leave to File Under Seal Granted on 4/5/2022] |
| ) | |
| Defendant ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE ADMISSION OF ALLEGED CO-CONSPIRATOR STATEMENTS

The defendant asks the Court to exclude, pre-trial, a specific statement of his co-conspirator, Gordon Ernst. Dkt. 137. What the defendant seeks to exclude is Ernst's statement to another co-conspirator, in the spring of 2014, that Ernst "was likely going to do a deal with Amin to help his daughter." According to the defendant, regardless of its clear relevance, the statement should be excluded as inadmissible hearsay.

The defendant's argument fails for two reasons. First, the defendant seeks to exclude the statement solely under Rule 801(d)(2)(E) (the "co-conspirator statements" exception) of the Federal Rules of Evidence, ignoring entirely the admissibility of the statement under Rule 803(3) (the "state of mind" exception). Second, as to the admissibility of the statement under Rule 801(d)(2)(E), the defendant's motion is premature and in direct conflict with controlling First Circuit precedent. *See United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977).

### FACTUAL BACKGROUND

The defendant is charged in a two-count Indictment. Count One, under 18 U.S.C. § 371, charges conspiracy to commit mail fraud, honest services mail fraud, and federal programs bribery. Count Two, under 18 U.S.C. § 666(a)(2), charges a substantive count of federal programs bribery. In short, the Indictment alleges that the defendant agreed to pay the Georgetown Tennis Coach

(Gordon Ernst) a cash bribe so that Ernst would identify Khoury's daughter as a tennis recruit to the Georgetown University Admissions Committee without regard for her actual tennis abilities (or lack thereof). This cash bribe was paid through a middleman who was also a member of the conspiracy.

The middleman received an order of immunity and testified before a grand jury, and will also be a government witness at trial. In his grand jury testimony, the middleman described the conspiracy between himself, Ernst, and the defendant. In summary, the middleman testified that the defendant agreed to pay Ernst approximately $200,000 in exchange for Ernst identifying the defendant's daughter as a tennis recruit. This conspiracy began at least as early as May 2014, when the defendant, Ernst, and the middleman all attended their Brown University reunion dinner. After that dinner, Ernst told the middleman that Ernst "was likely going to do a deal with Amin to help his daughter."[1] Ernst, the middleman, and the defendant followed through on this plan: the defendant's daughter was admitted to Georgetown as a tennis recruit in the next admissions cycle, and thereafter, the defendant delivered to Ernst (through the middleman) a duffle bag containing approximately $200,000 in cash, less the middleman's cut of approximately $30,000.

The government will present other evidence at trial corroborating the middleman's description of events, such as: (1) the defendant's own statements describing how Ernst was presenting the defendant's daughter as a tennis recruit to Georgetown Admissions; (2) evidence that the defendant's daughter was not talented enough at tennis to be recruited by Georgetown (a Division 1 program); (3) text messages between the defendant, Ernst, and the middleman in which Ernst asked the defendant when he would "square up" the remaining balance the defendant owed

---

[1] [redacted]

him; (4) financial records showing that the defendant withdrew $200,000 in cash in the spring of 2015 after his daughter had received final confirmation of her acceptance to Georgetown; and (5) testimony from current and former employees at Georgetown University and Middlesex High School that the defendant's daughter's grades and test scores were well below a typical admitted student to Georgetown.

Of note, Ernst has already pleaded guilty to participating in this conspiracy with the defendant. *United States v. Ernst et al*, 19-CR-10081-IT. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[2] Nevertheless, as described below, Ernst's statements are still admissible under the Federal Rules of Evidence and controlling First Circuit precedent.

## ARGUMENT

Ernst's statement to a co-conspirator that Ernst "was likely going to do a deal with Amin to help his daughter" is admissible under Rules 803(3) and 801(d)(2)(E) of the Federal Rules of Evidence. Each is addressed in turn.

I. *Admissibility under Fed. R. Evid. 803(3)*

    a. *Legal Background*

The rule against hearsay creates an exception for statements of a declarant's "then-existing . . . motive, intent, or plan." Fed. R. Evid. 803(3).[3] The jury can consider such statements as

---

[2] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[3] The entirety of Rule 803(3) reads: "***Then-Existing Mental, Emotional, or Physical Condition.*** A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health),

3

evidence of the declarant's intentions for the future. *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 332 F. Supp. 3d 446, 477 (D. Mass. 2018) ("[O]ut-of-court statements are routinely admitted pursuant to Rule 803 to show intent, even where intent is the very thing sought to be proved."). The jury can also consider such statements as evidence that the declarant later acted on those intentions. Advisory Committee Notes to Fed. R. Evid. 803(3) ("The rule of *Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285 . . . allowing evidence of intention as tending to prove the doing of the act intended, is, of course, left undisturbed."); *United States v. Diaz*, 597 F.3d 56, 66 (1st Cir. 2010) (the *Hillmon* doctrine "allows admission of a hearsay statement of intent for the purpose of showing that the declarant later acted in accordance with his or her expressed intention"); *McCormick on Evidence* § 275, at 275-76 (Kenneth S. Broun, ed., 6th ed. 2006)) ("Statements of state of mind are now recognized as admissible to prove subsequent conduct."). Further, courts have "generally admitted" statements of a declarant to prove the conduct of a third party where the third party was the subject of the statement. *McCormick on Evidence* § 275, at 275-76 (collecting cases); *see also Diaz*, 597 F.3d at 66 (noting that "some courts also have allowed such evidence to prove the actions of a third party" and citing *McCormick on Evidence* § 275); *United States v. Houlihan*, 871 F. Supp. 1495, 1498 (D. Mass. 1994).

To qualify under Rule 803(3), the declarant's statement must reflect their current (or "then-existing") state of mind with respect to the "motive, intent, or plan" as opposed to their state of mind on some previous date. *United States v. Torres-Rosario*, 658 F.3d 110, 114–15 (1st Cir. 2011) ("The contemporaneity requirement—that the statement evidence a 'then existing' state of mind—is part of the rationale since spontaneity in expressing one's present state of mind is thought

---

but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will."

4

to reduce the risk of deception."). Where a declarant expresses their hope or intent for the future, the First Circuit and its lower courts have held that the exception covers a wide variety of out-of-court statements. *See, e.g.*, *Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 90 (1st Cir. 2017) (upholding the admission of customer statements in which customers said that they would likely not buy a product from the plaintiff's company in the future); *Sawyer v. Kindred Healthcare, Inc.*, 186 F. Supp. 3d 118, 123 (D. Mass. 2016) (admitting statements in which the declarant explained that he wanted certain individuals "fired" because "I want to send a clear message that abuse will not be tolerated"); *Houlihan*, 871 F. Supp. at 1498 (admitting a murder victim's statement that he planned on seeing the defendant in the near future as probative of whether the meeting later occurred, explaining: "[a]lthough it is true that [the victim's] statement of intent is only circumstantial evidence that he actually met [the defendant], this statement will be allowed to function as part of the larger array of evidence before the jury so that they may decide for themselves what weight—if any—to give [it].").

        b. *Ernst's Statement Qualifies under Fed. R. Evid. 803(3)*

Ernst's statement that he "was likely going to do a deal with Amin to help his daughter" qualifies under the "state of mind" exception to the hearsay rule. Fed. R. Evid. 803(3). Ernst made this statement to a co-conspirator immediately after meeting with the defendant. And as the defendant conceded in his motion, Ernst was addressing "a future event ('*going to do*') and was expressing his own aspirations ('*he* was…going to do a deal')." Dkt. 138 at 4 (emphasis in original). Ernst's statement of his intention for the future—or, as the defendant put it, Ernst's "future" "aspirations," *id.*—is precisely the sort of "statement of the declarant's . . . motive, intent, or plan" that is admissible under Fed. R. Evid. 803(3).

Such statements are commonly accepted as probative of whether the declarant (in this case, Ernst) had the stated intention at the time the statement was made. *SiOnyx*, 332 F. Supp. 3d at 477 ("[O]ut-of-court statements are routinely admitted pursuant to Rule 803 to show intent . . . ."). The statement may also be used to prove that Ernst later acted on that intention. *Diaz*, 597 F.3d at 66 (the *Hillmon* doctrine "allows admission of a hearsay statement of intent for the purpose of showing that the declarant later acted in accordance with his or her expressed intention"). Ernst's intentions and actions are relevant because, in order to prove a conspiracy between the defendant and Ernst, the government must show there was an agreement involving Ernst and that Ernst or another co-conspirator took some action in furtherance of that agreement. Chief District Judge Nancy Torresen's 2021 Revisions to Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 4.18.371(1). And beyond Ernst's intentions and actions, the government may also utilize Ernst's statements to prove *the defendant's* actions. *See McCormick on Evidence* § 275, at 275-76; *Diaz*, 597 F.3d at 66; *Houlihan*, 871 F. Supp. at 1498 (admitting a murder victim's statement that he planned on seeing the defendant in the near future as probative of whether the meeting later occurred).

II. Admissibility under Fed. R. Evid. 801(d)(2)(E)

    a. Legal Background

Federal Rule of Evidence 801(d)(2)(E) permits the introduction of a statement offered against a party if the statement is made "by the party's co-conspirator during and in furtherance of the conspiracy." *Id.* "The proponent of the statement bears the burden of establishing, by a preponderance of the evidence, that a conspiracy embracing both the declarant and the defendant existed, and that the declarant uttered the statement during and in furtherance of the conspiracy." *United States v. Bradshaw*, 281 F.3d 278, 283 (1st Cir. 2002) (citing *United States v. Sepulveda*,

6

15 F.3d 1161, 1180 (1st Cir. 1993)).  In the First Circuit, this determination is known as a *Petrozziello* ruling based on the First Circuit's opinion in *United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977).  *See United States v. Ciresi*, 697 F.3d 19, 25 (1st Cir. 2012).

The First Circuit has repeatedly addressed the issue of evidence proffered under Rule 801(d)(2)(E) and "constructed a model for the handling" of such evidence that *requires* the trial court to conditionally admit the alleged co-conspirator statements.  *Bradshaw*, 281 F.3d at 283 (citing *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir. 1980)); *see also United States v. Diaz*, 670 F.3d 332, 348 (1st Cir. 2012) ("[a] district court faced with a challenge to the admission of a co-conspirator's statement *must* provisionally admit the statement") (emphasis added); *United States v. Rivera-Donate*, 682 F.3d 120, 131 (1st Cir. 2012) (same); *United States v. Vazquez-Botet*, 532 F.3d 37, 65 (1st Cir. 2008) (noting that "[o]ur case law *instructs* district courts faced with a challenge to the admission of a co-conspirator hearsay statement to admit the statement provisionally") (emphasis added).  At the close of all evidence, the court must make a final determination as to the admissibility of the evidence.  *See Bradshaw*, 281 F.3d at 283.  If the court concludes "that the provisionally admitted evidence does not satisfy the applicable standard, it must 'give a cautionary instruction to the jury, or, upon an appropriate motion, declare a mistrial if the instruction will not suffice to cure any prejudice.'" *Id*. (citing *Ciampaglia*, 628 F.2d at 638).

The purpose of this practice is to avoid conducting a mini-trial before the trial actually starts.  As Judge Tauro explained it in *United States v. Barletta*, 500 F. Supp. 739, 743 (D. Mass. 1980):

> Requesting this court to make a ruling on admissibility contingent with the government satisfying its offer of proof is little less than asking for an advisory opinion based on a hypothetical set of facts not yet established by the evidence presented before a jury. The avoidance of such an academic exercise is itself good cause for a deferral.

7

*Id. See also United States v. Berletta*, 644 F.2d 50, 58 & n.8 (1st Cir. 1981) (noting that a ruling on the admissibility of co-conspirator statements prior to trial would "require conducting virtually a complete mini-trial prior to the actual trial").

Under this model, district courts routinely deny requests for pre-trial rulings on the admissibility of co-conspirator statements,[4] and the First Circuit routinely affirms such holdings.[5] The cases cited in the defendant's motion suggesting that a pre-trial ruling is warranted, Dkt. 138 at 6-7, are outdated. As *current* precedent makes clear, the First Circuit specifically advises against any such pre-trial ruling.

> b. *Defendant's Motion Fails under Fed. R. Evid. 801(d)(2)(E)*

As discussed above, the Court need not address any of the arguments in the defendant's motion, which focus solely on Rule 801(d)(2)(E), because the specific statement at issue is separately admissible under Rule 803(3). However, even if the Court were to consider the defendant's arguments under Rule 801(d)(2)(E), those arguments should be rejected for several reasons.

---

[4] *See, e.g.*, *United States v. DeNunzio*, No. 14-cr-10284-NMG, Dkt. 429 (denying motion for a "pre-trial proffer and determination with respect to alleged co-conspirator hearsay statements under *Petrozziello*"); *United States v. Recines-Garcia*, No. 15-cr-10338-FDS, Dkt. 1845 (denying defendants' motion for pre-trial *Petrozziello* hearing).

[5] *See, e.g.*, *United States v. George*, No. 11-cr-10201-NMG, Dkt. 193 at 97 (making *Petrozziello* finding after conditionally admitting co-conspirator statements), *aff'd*, 761 F.3d 42, 54–55 (1st Cir. 2014) ("How this works is that a judge conditionally admits the alleged co-conspirator statements subject to a later finding by the judge. . . ."); *United States v. Isabel*, 945 F.2d 1193, 1198-99 (1st Cir. 1991) ("Appellants contend that the district court erroneously refused to conduct a pre-trial hearing on the admissibility of certain alleged co-conspirator statements. Their contention is simply incorrect."); *United States v. Medina*, 761 F.3d 12, 17 (1st Cir. 1985); *United States v. Baltas*, 236 F.3d 27, 35 (1st Cir. 2001) (affirming district court's denial of requests for pre-trial rulings on admissibility of co-conspirator statements).

*First and foremost*, the defendant's motion is entirely premature. As discussed *supra* pp. 7-8, controlling First Circuit precedent makes clear that the Court should not make a *Petrozziello* finding until after the evidence is presented at trial. The defendant's motion—which asks the Court, pre-trial, to exclude the statements of the defendant's co-conspirator (Ernst)—should therefore be denied on that basis alone.

*Second*, the defendant's argument that Ernst's statement "allud[es] to a supposed conspiracy of which there is no independent or extrinsic proof," Dkt. 138 at 6, simply ignores the facts in the record. As the government described, *supra* pp. 1-3, in addition to Ernst's statement challenged by the defendant, the government will present substantial other evidence that the defendant, Ernst, and the middleman entered into a conspiracy.

*Third*, the defendant's argument that Ernst's statement somehow implicates the Confrontation Clause under *Crawford v. Washington*, and by extension Rule 403 of the Federal Rules of Evidence, Dkt. 138 at 5-6, misreads *Crawford* and its progeny. Ernst's statement is not "testimonial" because it was not "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. 36, 52 (2004). The defendant does not argue otherwise in his motion. Therefore, because Ernst's statement is not "testimonial," *Crawford* is inapplicable. *Horton v. Allen*, 370 F.3d 75, 83 (1st Cir. 2004) ("*Crawford* draws a distinction between testimonial and nontestimonial hearsay and applies only to the former category of statements."). The defendant cannot create a *Crawford* issue where none otherwise exists simply by invoking Rule 403.

*Fourth and lastly*, the defendant's argument that Ernst's statement was not made "in furtherance" of the conspiracy, Dkt. 138 at 5, is erroneous. Even at this pre-trial stage, the evidence before the Court suggests that, in May of 2014, Ernst and the defendant agreed on the basics of

9

their conspiracy, *i.e.*, that Ernst would help the defendant get his daughter into Georgetown, through fraud, for a fee. Immediately after that conversation, Ernst relayed the "deal" to another co-conspirator, who Ernst and the defendant then used to facilitate the illegal payment. Notifying a fellow co-conspirator of the plan (or "deal") is plainly a statement "in furtherance of the conspiracy."

## CONCLUSION

For the forgoing reasons, the Court should deny the defendant's motion.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: */s/ Christopher J. Markham*
CHRISTOPHER J. MARKHAM
KRISTEN A. KEARNEY
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: April 8, 2022                                    *s/ Christopher J. Markham*
                                                                          Christopher J. Markham
                                                                          Assistant United States Attorney