**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-cr-10177-PBS |
| v. | |
| AMIN KHOURY*,* | |
| Defendant | |

**AMIN KHOURY'S INITIAL OPPOSITION AND REQUEST FOR PERMISSION TO SUPPLEMENT THIS OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE OR OTHERWISE LIMIT IRRELEVANT EVIDENCE CONCERNING GEORGETOWN FUNDRAISING AND UNRELATED DONORS (ECF #122)**

The government's Motion (ECF #122) seeks to prohibit Mr. Khoury from introducing exhibits, witness testimony and expert testimony about the fundraising practices of Georgetown University, arguing that such evidence is irrelevant and would cause unnecessary delay and confusion at trial.  In count one of the indictment, Mr. Khoury is alleged to have conspired with Georgetown's tennis coach to commit three crimes: (1) mail fraud; (2) honest services mail fraud; and (3) federal programs bribery.  The government contends, regarding that first alleged conspiracy object, mail fraud, that Mr. Khoury intended that Georgetown be defrauded when Mr. Khoury's daughter was designated as a tennis recruit.  The government also contends, regarding the second object, honest services fraud, that Mr. Khoury caused and intended for the tennis coach to violate his duty of honest services to Georgetown, by designating Mr. Khoury's daughter as a tennis recruit.  In order to try to prove each of these crimes, the government is

1

expected to offer testimony and evidence of Georgetown's policies and practices for recruiting tennis players, presumably to argue that they were violated.

Mr. Khoury intends to show that he did not pay a bribe or conspire to defraud Georgetown through his daughter's admission to the school. Mr. Khoury will offer testimony and evidence to show that his daughter was properly admitted to Georgetown and that in addition to her academics and her athletic abilities, the development prospects for families like the Khourys was one of the factors considered in admitting such development candidates to the school. Georgetown's policies and practices around admissions, development, and athletic recruiting are therefore critical and relevant to Mr. Khoury's defense. What the government seemingly does not want to acknowledge, nor does it apparently want the jury to learn about, is the importance and role of fundraising in admissions generally and in athletic admissions in particular.

In the course of its sprawling so-called "Varsity Blues" investigation, the government obtained a large but narrow set of documents from Georgetown, which were produced to Mr. Khoury. After receiving a grand jury subpoena during that investigation, it appears that Georgetown and the government agreed to limit Georgetown's production to primarily documents from the email account of former tennis coach, Gordon Ernst, along with documents specifically related to clients of Rick Singer, who actually had conspired with Ernst to admit a number of students as fake tennis recruits with falsified applications.[1] Those documents, although substantially confined to Mr. Ernst's emails, shed light on the intertwinement of admissions, athletic recruitment and fundraising.

---

[1] Mr. Khoury was not a client and had no dealings or connection whatsoever with Rick Singer.

Based on those limited documents produced by Georgetown and the government, Mr. Khoury petitioned the Court, *ex parte* and under seal, for a Rule 17 subpoena to Georgetown in May 2021.  The subpoena was issued by the Magistrate Judge but was ultimately limited following sealed litigation with Georgetown.  In that litigation, the Court made several important findings regarding the relevance of the material sought -- finding that it was relevant -- but ultimately seeking to alleviate Georgetown's burden in responding to the subpoena.

In January 2022, Mr. Khoury moved again, *ex parte* and under seal, for a new subpoena to Georgetown.  The new subpoena greatly reduced the amount of information Mr. Khoury sought in a good faith effort to reduce the burden on Georgetown in providing Mr. Khoury with the information that the Court had previously deemed relevant.  Georgetown has again sought to quash the subpoena, maintaining that the material sought is irrelevant and claiming that requiring it to comply would be overly burdensome.  Mr. Khoury's response to Georgetown's motion will be filed on or before the deadline of April 11.[2]

The information sought via the subpoena issued by Chief Magistrate Judge Kelley will further expose the interconnectedness of admissions, athletic recruitment and fundraising.  The documents will show that wealthy candidates who came to the attention of the Development department (called Central Advancement at Georgetown) were treated differently, and their applications for admission reviewed more favorably, than other applicants'.  The documents will demonstrate that the same preference applied for athletes with "plus factors." Student athletes whose wealthy parents and families could donate to the school received a boost.  Mr. Khoury has already demonstrated the relevance of these materials to the Magistrate Judge even through the

---

[2] Mr. Khoury continues to try to reach an accord with Georgetown in order to obtain the relevant material without causing undue burden.  Mr. Khoury has proposed a specific process that Georgetown could follow to run searches electronically without great burden and awaits Georgetown's response.

limited and narrow parameters established between the government and Georgetown for the production of documents by Georgetown.

Contrary to the government's contention in its motion that Mr. Khoury's intention is to "blame the victim"[3] (Mot. p. 6), and that the "only purpose of this evidence is to deride Georgetown's fundraising efforts" (*Id.* at p. 5), Mr. Khoury's intention is just the opposite. Mr. Khoury simply seeks to provide the jury with accurate information about the intersection of admissions, athletics and fundraising at Georgetown, which will establish that Mr. Khoury's daughter was properly admitted to the school.

Georgetown and the government seemingly would prefer that the jury deliberate under the false impression that college admissions is a pure meritocracy, which it most certainly is not. It is clear from the indictment and briefing by the government that at trial the government will argue to the jury that only top-ranked tennis players were recruited at Georgetown and that only those exceptional athletes or those who are gifted academically are admitted to Georgetown. But the documents subpoenaed show and tell a much different story: that in making admissions decisions, Georgetown considers not only academics and athletic ability, but also whether the applicant is the child of a wealthy or prominent family that has the potential to donate to the school and advance the school's "opportunities." As Georgetown's longtime Dean of Admissions, Charles Deacon, is quoted as saying in a class action lawsuit brought by the one-time lead prosecutor in the Varsity Blues cases after leaving the U.S. Attorney's Office: "On the fundraising side, we also have a small number of 'development potential' candidates. If Bill Gates wants his kid to come to Georgetown, we'd be more than happy to have him come and talk to us." *Sia Henry v. Brown University et al.*, ECF#1: ¶155, No. 22-CV-00125 (N.D. Ill. Jan 9,

---

[3] Ironically, it's the former lead Varsity Blues prosecutor who is now "blam[ing] the victim" in a class action law suit alleging that Georgetown violated federal law in its admission practices.

2022). Dean Deacon added that the children of wealthy and well-positioned families are given extra admissions consideration because those families have the potential to advance Georgetown's "opportunities": "[N]ot all those special cases end up being people who give a lot of money. We have children of Supreme Court justices, senators, and so on apply. We may give extra consideration to them because of the opportunities that may bring." *Id.*

In a related case recently on trial involving whether a USC water polo coach conspired with others to violate his duty of honest services and perpetrate a fraud on USC, Judge Talwani, in discussing the same type of evidence – that which shows the influence of money in admissions – stated on the record: "I think what part of a university cares about is that they want to be able to provide plausible deniability that they're doing this thing, just like how come we're letting in legacy kids with lower scores." Day 11 of Trial, *US v. Vavic*, 19-cr-10081-IT.[4]

Indeed, and the subject of a separate forthcoming motion to compel, it appears that the government and Georgetown's shared desire to obfuscate and hide the truth extends even to the investigative record. The lead Varsity Blues case agent testified on Day 11 of *US v. Vavic*, that over 400 memorandums of interviews were created during the course of the investigations. *Id.* The agent also testified on direct examination by the government that she was trained to take detailed notes because the "details are important." *Id.* However when Georgetown's outside counsel made a proffer to the government, the rules changed. As indicated, deep within a lengthy FBI Sentinel report produced to the defendant by the government, Georgetown gave a proffer to the government, and despite the acknowledged importance of note taking, the agents were instructed not to take any notes at the direction of the prosecutor:

---

[4] *US v. Vavic* citations are to the day of trial only as the transcript is not yet publicly available. It is presumably available to the government to verify any references to trial testimony or the Judge's comments on the record.

(U) On November 28, 2018, IRS-CI Special Agent Elizabeth Keating, AUSA Eric Rosen, and AUSA Justin O'Connell met with Georgetown University counsel for a pre-arraigned attorney proffer. Per AUSA Rosen instructions, no notes were taken. Georgetown Universit...

The government's issue is not just with documents Mr. Khoury has had to and continues to fight to obtain in order to demonstrate what Georgetown's actual practices are but also with witnesses Mr. Khoury may call at trial and with his expert.  On the government's witness list are representatives from Georgetown Admissions (Lysy) and Athletics (Trump).  On the defendant's witness list – and claimed to be irrelevant by the government – are also representatives from the same departments at Georgetown: Admissions (Deacon and Colman), Athletics (Reed) and Development for Athletics (Smith).  The government will call its witnesses to try to show what Georgetown's admissions and recruiting policies were.  The defendant will counter by calling an expert and witnesses from those same departments to ensure that those policies are accurately put before the jury so that it may determine if those polices were indeed violated and if Mr. Khoury conspired to do so.

In order to make the most compelling record, Mr. Khoury respectfully requests, in light of the expected continuance of the trial date and the pendency of subpoena litigation before Chief Magistrate Judge Kelley with Georgetown, that the Court grant Mr. Khoury permission to supplement this opposition.  Upon completion of the subpoena litigation, Mr. Khoury will then be in the best position to respond in full to the government's Motion (ECF #122) and to demonstrate to the Court why the material is quite relevant to the determinations to be made by the jury at trial.

Mr. Khoury therefore respectfully requests that the Court permit Mr. Khoury additional time to respond to the government's motion, until 10 days after production of documents following the resolution of the subpoena litigation by the Magistrate Judge.

Respectfully submitted,

AMIN KHOURY,
By his attorneys,

*/s/ Eóin P. Beirne*

R. Robert Popeo (BBO #403360)
Mark E. Robinson (BBO #423080)
Cory S. Flashner (BBO #629205)
Eóin P. Beirne (BBO #660885)
Mathilda S. McGee-Tubb (BBO #687434)
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
RRPopeo@mintz.com
MERobinson@mintz.com
CSFlashner@mintz.com
EPBeirne@mintz.com
MSMcGee-Tubb@mintz.com

Dated: April 8, 2022

## <u>CERTIFICATE OF SERVICE</u>

I, Eóin P. Beirne, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 8, 2022.

> */s/ Eóin P. Beirne*
> Eóin P. Beirne (BBO # 660885)