IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 20-10177-PBS |
| | ) | |
| AMIN KHOURY, | ) | |
| | ) | |
| Defendant | ) | |

## GOVERNMENT'S TRIAL BRIEF

The government submits this trial brief in the above-captioned case in anticipation of the trial scheduled to begin June 7, 2022.

## I.    BACKGROUND

The defendant is charged in a two-count indictment.  Under Count I, the defendant is charged with conspiracy to commit mail fraud, honest services mail fraud, and federal programs bribery, in violation of 18 U.S.C. § 371.  Under Count II, the defendant is charged with federal programs bribery, in violation of 18 U.S.C. § 666(a)(2).  The government previously provided the Court a summary of the factual basis for these charges.  *See* Dkt. 185.  For the Court's convenience, the government below provides a summary of its pretrial submissions. Additionally, the government thereafter provides a brief discussion of potential, foreseeable evidentiary issues that may arise at trial.

## II.    PREVIOUS SUBMISSIONS TO THE COURT

The government has previously filed with the Court the following trial documents:

- ***Petrozziello* Proffer.**  The government filed a summary of anticipated evidence of the charged conspiracy in this case at **Dkt. 185**.

- **Stipulations**.  The government filed stipulations that have been agreed-upon by the parties at **Dkt. 186**.  The stipulations address authenticity of various business records, and separately, other records from Middlesex School and Georgetown University received in response to legal process.  Both parties reserved other objections to those documents.  Based on communications with defense counsel, the government does not anticipate any additional stipulations at this time.

- **Witness List**.  The government filed a revised witness list at **Dkt. 209**.

- **Exhibit List**.  The parties filed joint uncontested and contested exhibit lists at **Dkts. 128 and 129**.  The government and defense are in the process of revising their respective exhibit lists.  The government anticipates filing updated joint uncontested and contested exhibit lists before trial.  In revising the exhibit lists, the government has withdrawn a number of its hearsay objections to the defendant's proposed exhibits on the understanding that defendant is not offering the materials in question for the truth of the matter asserted.  The government may request appropriate limiting instructions if/when these exhibits are used at trial.  *See, e.g.*, *Adamson v. Cathel*, 633 F.3d 248, 258 (3d Cir. 2011) ("An appropriate limiting instruction is necessary to prohibit jury misuse of such evidence").

- **Motions *in Limine***.  The government filed six motions *in limine* at **Dkts. 122, 123, 124, 125, 126, and 127**.  The Court has provided initial guidance on these matters, and the government will raise these issues at the appropriate time(s), if necessary, during the course of trial.

- **Motion To Admit AT&T Records**.  The government filed a motion seeking a preliminary ruling on admissibility of duly authenticated AT&T business records

pursuant to Rule 902(11) of the Federal Rules of Evidence at **Dkt. 225**.  At the pre-
trial conference, counsel for the defendant did not contest the admissibility of the
business records but asked for the opportunity to file an opposition, under seal, to
address one or more unspecified issues.  The government respectfully submits that
whatever the issues the defendant raised, they do not impact the admissibility of the
AT&T records under Rule 902(11).  The government respectfully requests a ruling
on this issue, if possible, prior to the start of trial.

- ***Voir Dire***.  The government has filed a proposed list of *voir dire* questions at **Dkt. 241**.

- **Juror Questionnaire.** At the pretrial conference on May 23, 2022, the Court
indicated it would consider a brief, two-question juror questionnaire addressing
potential jurors' prior experience with college admissions and pretrial publicity.  The
government has proposed a draft questionnaire to defense counsel but was unable to
reach agreement on the questions.  The government has filed today the government's
proposed questionnaire at **Dkt. 245**.

- **Jury Instructions.** The government filed its proposed jury instructions, which
largely track the Model Jury Instructions for the First Circuit as well as the jury
instructions given in similar, previous cases at **Dkt. 130**.  The government
anticipates filing objections to the defendant's proposed jury instructions.

III.    **OTHER FORESEEABLE EVIDENTIARY ISSUES**

The government has identified the following foreseeable evidentiary issues at trial.

   **a.  Gordon Ernst is Unavailable to Both Parties.**

Co-conspirator Gordon Ernst was charged in a separate indictment, *United States v. Ernst*, No. 19-cr-10081-IT.  Ernst pleaded guilty, including to charges related to the conspiracy with defendant Khoury.  *Ernst*, No. 19-cr-10081-IT, Tr. of Rule 11 Hr'g (Oct. 25, 2011) at 30 (Dkt. 1001).  On May 11, 2022, the defendant filed a Supplemental Motion to Continue Trial in which he noted, among other things, that potential publicity around Ernst's sentencing, scheduled for May 26, 2022, could affect his right to a fair trial.  Dkt. 195 at 3-4.  Accordingly, the government moved to continue Ernst's sentencing, which the court (Talwani, J.) granted. *Ernst*, No. 19-cr-10081-IT, Order granting motion to continue (Dkt. 1309).  Ernst is now scheduled for sentencing on July 1, 2022.  *Id.*  Because Ernst has not yet been sentenced, he retains a Fifth Amendment privilege against self-incrimination.  *Mitchell v. United States*, 526 U.S. 314 (1999).  On May 31, 2022, counsel for Ernst, Tracy Miner, confirmed to the government that Ernst intends to assert his privilege against self-incrimination if called to testify by either party at the trial of defendant Khoury.  As such, a privilege applies and Ernst is unavailable.

Based on Ernst's unavailability, the government may request an instruction to the jury that Ernst is equally unavailable to both sides, and thus no inference can be drawn by either side's failure to call him.  *See, e.g.*, *United States v. Johnson*, 121 Fed. App'x 912, 915 (2d Cir. 2005) ("A no-inference instruction, far from being error, is the recommended charge in circumstances where a witness's invocation of the Fifth Amendment renders him unavailable to both sides.") (citing 1 Leonard B. Sand et al., *Modern Federal Jury Instructions-Criminal* § 6.04

at 6-22 (rev. 2004) and Edward J. Devitt *et al*., *Federal Jury Practice and Instructions* § 14.15 (4th ed. 1992); *cf. United States v. McElwee*, No. 08-cr-00269, 2010 WL 235007, at *3 (W.D. La. Jan. 15, 2010) (denying motion for new trial based on no-inference instruction given after defendant insinuated that government's failure to call co-conspirator as a witness was unfavorable to government's case, where co-conspirator was equally unavailable to both parties); *United States v. Persico*, No. 04-cr-00911, 2008 WL 11497840, at *9 (E.D.N.Y. Nov. 24, 2008) (same); *United States v. Forbes*, No. 02-cr-00264, 2007 WL 141952, at *7 (D. Conn. Jan. 17, 2007) (denying motion for new trial where court ruled that, if defendant's summation concerned government's failure to call equally unavailable witness, court would give "equally unavailable" instruction).

Additionally, because Ernst is unavailable, the defendant should not be permitted to suggest at trial that the government should have but failed to call Ernst as a witness.  If the defendant does make this suggestion, in sum or in substance, that opens the door to evidence of Ernst's pending sentencing and resulting unavailability, including through a government request for judicial notice.  *Rodi v. S. New England Sch. Of L.*, 389 F.3d 5, 18–19 (1st Cir. 2004) (the date, nature, and disposition of an action are "susceptible to judicial notice") (citing Fed. R. Evid. 201); *see also Kowalski v. Gagne,* 914 F.2d 299, 305 (1st Cir.1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

### b.  Gordon Ernst is an Unavailable Declarant.

Ernst, because he is unavailable at trial, *see supra* § III.a, is an unavailable declarant for the purposes of the hearsay rule.  Fed. R. Evid. 804 ("A declarant is considered to be unavailable as a witness if the declarant (1) is exempted from testifying about the subject matter of the

declarant's statement because the court rules that a privilege applies.").  Certain hearsay

exceptions may therefore apply to Ernst's out-of-court statements, including Ernst's statements

that were against his own penal or pecuniary interest.  Fed. R. Evid. 804(b)(3).  "This Rule 'is

founded on the commonsense notion that reasonable people, even reasonable people who are not

especially honest, tend not to make self-inculpatory statements unless they believe them to be

true.'"  *United States v. Gupta*, 747 F.3d 111, 127 (2d Cir. 2014) (quoting *Williamson v. United

States,* 512 U.S. 594, 599 (1994)).

### c.  The Government May Introduce Defendant's Statements as well as Statements of Third Parties that Provide Necessary Context for Defendant's Statements.

The government will seek to introduce certain statements by the defendant, including his

emails and text messages.  The defendant's statements, if offered by the government, are non-

hearsay because they are statements of a party opponent.  Fed. R. Evid. 801(d)(2)(A).

The government may also introduce the emails and text messages sent to the defendant in

order to provide necessary context or background to understand the defendant's admissions.

Evidence is not hearsay if offered for the limited purposes of providing "background" or

"context."  *See, e.g.*, *United v. Page*, 521 F.3d 101, 106 (1st Cir. 2008); *United States v. Catano*,

65 F.3d 219, 225 (1st Cir. 1995) (defendant's part of conversations admissible as non-hearsay

admissions of a party and cooperator's part of the conversations admissible to place admissions

into context and make them intelligible to the jury); *United States v. Castro-Lara*, 970 F.3d 976,

981 (1st Cir. 1992).  The same principle applies to texts to the defendant that pose questions,

issue instructions, or make suggestions because such expressions are not offered for the truth of

their contents, but instead to provide context for defendant's response (or lack of response).  *See,

e.g.*, *United States v. Vest*, 842 F.2d 1319, 1330 (1st Cir. 1988) (noting that a question is not

hearsay); *United States v. Murphy*, 193 F.3d 1, 5 (1st Cir. 1999) (same, for instructions).

### d. The Defendant's Co-Conspirator May Authenticate Text Messages He Received.

The defendant sent text messages to his co-conspirators that the government will introduce as part of one or more exhibits in its case-in-chief.  To authenticate those messages, the government will call one of the co-conspirators that received the text messages on his cellphone and took screenshots of the messages.  That testimony alone is sufficient to authenticate the text messages.  Fed. R. Evid. 901(b)(1) (authentication requirement is satisfied by testimony of a witness with knowledge that "an item is what it is claimed to be"); *see also, e.g.*, *United States v. Blanchard*, 867 F.3d 1, 5–6 (1st Cir. 2017) (authenticity established through the "direct testimony of . . . a percipient witness"); *United States v. Lebowitz*, 676 F.3d 1000, 1009 (11th Cir. 2012) (printout of an internet chat authenticated where witness "testified that he had printed out the chats and that the printouts submitted into evidence accurately reflected the chat messages"); *United States v. Lundy*, 676 F.3d 444 (5th Cir. 2012) (testimony by one party to chat that the chats are as he recorded them is enough to meet the low threshold for authentication); *United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009) (witness with "direct knowledge of the chats . . . could sufficiently authenticate the chat log presented at trial").

As an additional basis for authentication, both the co-conspirator's testimony and the AT&T business records will demonstrate that the text messages were received from a phone number controlled to by the defendant.  And further, the text messages refer to the defendant and Gordon Ernst, another co-conspirator, by their nicknames ("Amo," short for "Amin Khoury," and "Gord Gord," short for "Gordon Ernst").  *See* Fed. R. Evid. 901(b)(4) (the "contents . . . of the item, taken together with all the circumstances" may be sufficient to satisfy the authentication requirement); *see also United States v. Kilpatrick*, No. 10-20403, 2012 WL 3236727, at *4 (E.D. Mich. Aug. 7, 2012) ("distinctive characteristics serve to authenticate the

7

text messages"); *United States v. Safavian,* 435 F. Supp. 2d 36, 40 (D.D.C. 2006) (holding that distinctive characteristics were sufficient to authenticate emails where emails contained names of senders and recipients and contents discussed various professional and personal matters).

The defense is, of course, free to attack the co-conspirator's testimony.  However, any such attacks go only to the weight, and not the admissibility, of the text messages.  *United States v. Blanchard*, 867 F.3d 1, 6-7 (1st Cir. 2017) (authenticity standard does "not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity" and "any discrepancies" will go "to weight rather than admissibility").

**e.  The Defendant May Not Introduce His Own Prior Statements.**

Unlike the government, the defendant may not offer or elicit his prior statements at trial because those statements are hearsay.  *United States v. Rivera-Hernandez*, 497 F.3d 71, 80 (1st Cir. 2007) (citing Fed. R. Evid. 801, 802).  The defendant is not permitted to circumvent this rule by eliciting his statements through the cross-examination of other witnesses.  *United States v. Bauzo-Santiago*, 49 F. Supp. 3d 155, 157 (D.P.R. 2014) (prohibiting defendant from eliciting defendant's "out-of-court statement during cross-examination of government witnesses to impeach the witnesses") (citing *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995) and *United States v. Hudson*, 970 F.2d 948, 956 (1st Cir. 1992)).  Further, merely because the government presents only a subset of defendant's out-of-court statements, the defendant is not entitled to present his other statements absent a need to avoid "misunderstanding or distortion." *United States v. Simonelli*, 237 F.3d 19, 28 (1st Cir. 2001) (rule of completeness "does not permit the admission of otherwise inadmissible evidence simply because one party has referred to a portion of such evidence, . . . rather, it operates to ensure fairness where a misunderstanding

or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement").

>    **f.   The Government May Use Demonstrative Aids.**

The government may use demonstrative aids ("chalks") at trial to help bring alive a witness's testimony for the jury. *Jahagirdar v. United States*, 597 F. Supp. 2d 198, 203 (D. Mass. 2009) (approving of the use of "a demonstrative device to illustrate a witness'[s] testimony"); *United States v. Cartano*, 420 F.2d 362, 364 (1st Cir. 1970) (the parties' use of "demonstrative evidence . . . is within the sound discretion of the trial court").  In this case, the government anticipates that the defendant's co-conspirator will testify that the defendant paid the first installment of the bribe by handing the co-conspirator a paper bag containing $180,000 in cash.  The government anticipates using a demonstrative aid—a paper bag that is the same approximate size, shape, and color as the paper bag filled with cash that the defendant gave his co-conspirator and $180,000 in fake currency—to aid the jury in understanding the tool the defendant used to clandestinely pay the bribe, and to assist in corroborating the testimony of a key government witness (the defendant's co-conspirator).  The government will mark these demonstrative aids for identification but will not offer them into evidence.

Case law is clear that the government may present demonstrative evidence, including a physical object that is similar to an instrument used by the defendant in the commission of the crime.  *United States v. Towns*, 913 F.2d 434, 446 (7th Cir. 1990) (allowing admission of a gun and ski mask identified by eyewitnesses "as being similar to those possessed by the robbers" for "the limited demonstrative purpose of providing examples of the gun and ski mask" used in the robbery); *United States v. McIntosh*, 23 F.3d 1454, 1456 (8th Cir. 1994) (permitting the government "to mark as an exhibit and show to the jury a gun similar to the one [the defendant]

wore in a holster during the drug sales" for "purposes of demonstrating items similar to what [a witness] saw"); *see also United States v. Stewart-Carrasquillo*, 997 F.3d 408, 422 (1st Cir. 2021) (explaining that a "video reenactment[]" of events may be an appropriate "demonstrative aid" as long as the reenactment is "substantially similar" to the events at issue); *United States v. Aldaco*, 201 F.3d 979, 986–87 (7th Cir. 2000) (holding that a "replica" of the instrument of a crime is admissible as "demonstrative evidence to establish that objects of this nature were actually used in the commission of a crime," and noting that "Courts in our sister circuits have also frequently approved of the admission of replica evidence . . . for demonstrative purposes") (collecting cases).  The government need only make clear to the jury, and the government will indeed make clear to the jury, that the demonstrative is not the *actual* instrument used in the crime.  *Id.*

### g.  The Government May Introduce Summary Exhibits of Voluminous Records.

The government intends to present testimony from Lauren George, an auditor in the U.S. Attorney's Office.  Ms. George has reviewed primarily two sets of records in this case: (1) business records from various financial institutions, including records of the credit card and bank accounts of the defendant and his co-conspirators, and (2) business records from AT&T and Verizon which reflect, among other things, phone calls between the defendant and his co-conspirators.  These records collectively reflect thousands of pages of records that the jury cannot be expected to independently sift through.  Therefore, Ms. George will introduce summary exhibits of those records, independently admissible pursuant to Fed. R. Evid. 1006. The summary exhibits may include summaries of the dates, times, and length of phone calls between the defendant and his co-conspirators, as well as a summary of the defendant's financial activity in May 2015 (the period when the defendant made the first bribe payment).

Case law is clear that both Ms. George's testimony and the summary exhibits are admissible, and that the summary exhibits should be available to the jury during their deliberations.  "Our case law permits the use of summary tools to clarify complex testimony and evidence."  *United States v. McElroy*, 587 F.3d 73, 81 (1st Cir. 2009); *see also United States v. Appolon*, 695 F.3d 44, 61-62 (1st Cir. 2012) (affirming admission of summary exhibits that obviated the need for "the jury to sift through[] mortgage and sale records for each of the twenty-one properties involved in appellants' scheme[] and also facilitated tracing the scheme's proceeds"); *United States v. Nivica*, 887 F.2d 1110, 1125 (1st Cir. 1989) (summary exhibits admissible into evidence where information in the exhibit is based on one or more voluminous business records); *accord United States v. Milkiewicz*, 470 F.3d 390, 398 (1st Cir. 2006) ("[P]edagogical devices may be sufficiently accurate and reliable that they, too, are admissible in evidence, even though they do not meet the specific requirements of Rule 1006.").  These exhibits are admissible either individually or in addition to the underlying records.  *Milkiewicz*, 470 F.3d at 396–97 ("[W]hile in most cases a Rule 1006 chart will be the *only* evidence the fact finder will examine concerning a voluminous set of documents, in other instances the summary may be admitted *in addition to* the underlying documents to provide the jury with easier access to the relevant information.") (citations omitted).  The government may also elicit testimony from Ms. George describing and explaining the Rule 1006 exhibits.  *McElroy*, 587 F.3d at 81 ("[S]ummary witness testimony may be permitted pursuant to Rule 611(a).") (citing *Milkiewicz*, 470 F.3d at 397–98, and *United States v. Stierhoff*, 549 F.3d 19, 27 (1st Cir. 2008)); *Appolon*, 695 F.3d at 63 (allowing summary witness testimony "introducing and explaining the summary charts [the summary witness] prepared").

### h. Interview Summaries and Government Proffers Are Not Witness Statements and Cannot Be Used to Impeach a Witness on Cross-Examination.

The government has provided the defense with witness interview summaries prepared by law enforcement personnel. The summaries include the investigators' distillation of the substance of the information received from witnesses, were written after the interviews, and do not transcribe witnesses' verbatim statements. The interviewed witnesses did not create, review, or approve the summaries. Accordingly, the interview summaries do not constitute a contemporaneously recorded and substantially verbatim recital of the witnesses' statements. Under *Palermo v. United States*, 360 U.S. 343 (1959), such summaries that "evidence substantial selection of material, or which were prepared after the interview without the aid of complete notes, and hence rest on the memory of the agent . . . [or on] the agent's interpretations or impressions" are not witness statements under the Jencks Act. *Id.* at 352-53; *see also United States v. Foley*, 871 F.2d 235, 239 (1st Cir. 1989) ("It is plain that the 302s are not substantially verbatim recitals . . . and recorded contemporaneously.").

The government has also filed a pre-trial proffer under *United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977), summarizing the evidence it anticipates it will introduce at trial as to the existence of the charged conspiracy. Dkt. 185. The government's filing sought to provide only a summary of anticipated testimony and was not adopted or approved by any witness.

It is "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness's own rather than the product of the investigator's selections, interpretations, and interpolations." *Palermo*, 360 U.S. at 350. Using interview summaries or the government's *Petrozziello* filing for impeachment would mislead the jury into believing that they are the witness's prior statements or exact words. The defense, of course, may ask a witness about whether he or she conveyed the substance reflected in an interview

12

summary for the purpose of impeachment.  However, if the defense is not satisfied with the witness's answer, the defense should not be allowed to suggest to the witness or to the jury that the interview summary or proffer is the witness's prior statement or actual words or to publish or to introduce the contents of the interview summary or proffer as a prior inconsistent statement, absent a showing that the witness adopted the interview summary as his or her statement.

i.   **Georgetown University Emails Are Not *Per Se* Business Records.**

"An email is not a business record for purposes of the relevant hearsay exception simply because it was sent between two employees in a company or because employees regularly conduct business through emails. . . . If [all e-mails were admissible under Rule 803(6)], then every single email sent within any company would fall within the exception.  This result would obviate the entire purpose of the business records exception, which is designed for a limited category of records—namely those that are regularly produced as a part of a company's business activities."  *United States v. Daneshvar*, 925 F.3d 766, 777 (6th Cir. 2019).  Indeed, "it would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then *ergo* all those e-mails are business records falling within the ambit of Rule 803(6)."  *United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013); *see also Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 621 n.163 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 487 (2d Cir. 2009) ("An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule."); *United States v. Ferber*, 966 F. Supp. 90, 98-99 (D. Mass. 1997) (rejecting admission of e-mails into evidence as business records given that there was no showing that employer required such records to be maintained in the ordinary course of business).

The defendant, through counsel, suggested that "emails sent from someone at Georgetown . . . performing their job, to somebody else at Georgetown, also performing their job, qualifies as a business record."  Tr. of Pretrial Conference (April 14, 2022) at 35 (Dkt. 181).  But the defendant has marked as exhibits a number of emails between Georgetown employees and *outsiders* to the university, as well as between employees of his daughter's high school and *outsiders*, including the defendant, his then-wife, and his daughter.  These are not business records and therefore inadmissible absent another applicable exception to the hearsay rule.

Further, even as to emails "sent from someone at Georgetown . . . performing their job, to somebody else at Georgetown," *id.*, the Court has explained that the "same old business record rule" still applies.  *Id.* at 36.  Under Fed. R. Evid. 803(6), to qualify as a business record, the emails must be "a record of an act, event, condition, opinion, or diagnosis" that (a) "was made at or near the time by – or from information transmitted by – someone with knowledge"; (b) "was kept in the course of a regularly conducted activity" of Georgetown; (c) "making the record was a regular practice of that activity"; and (d) nothing indicates a lack of trustworthiness.

As of this filing, the defendant has marked more than 30 exhibits that are between employees at Georgetown.  These emails range in topic, but few, if any, are business records.  For example, Ex. AV is an email exchange between Ernst and a Georgetown director of gift planning in which they discuss a donation from a tennis parent.  Putting aside that the email is irrelevant—as it concerns a student admitted early action (not through tennis recruitment) and who joined the Georgetown tennis team (unlike the defendant's daughter)—in the email, Ernst states that the parent wants her donation to remain anonymous, as her husband and son do not know about it.  It is not at all clear how Ernst knows this or whether the email was sent at or near the time Ernst gained this knowledge.  Nor is it apparent that Ernst (as opposed to someone

14

within the Georgetown Advancement Office) kept this information in the course of his regular activity at Georgetown or that recording this information in an email from the tennis coach was a regular practice of Ernst or Georgetown.  Indeed, this email is simply a communication about a parent that could have been transmitted in any number of ways (*e.g.*, in person, over the phone, etc.).  That it was sent in an email does not make it a business record.

As another example, Ex. AL is an email in which the development director asks Ernst why a student apparently dropped off the tennis team.  Ernst replied that the student "is [last name's] niece."  Again putting aside the relevance issue, the email lacks any detail on who the individual named is or any indicia that the student is in fact that individual's niece, let alone that Ernst had knowledge of that fact.  Presumably it was not part of Ernst's regular activity to report to development on the familial relations of students.

As the government pointed out at the May 23, 2022 pretrial conference, many of the emails the defendant has marked also include banter between Ernst and others, which further supports the conclusion that these emails are simply communications between employees and not business records.  For example, the defendant has marked several emails between Ernst and the development director concerning a parent who wanted his son on the Georgetown tennis team.  *See* Exs. BU, BV.  Once again putting aside the relevance of the emails, where it appears the student may have been admitted to Georgetown without help from Ernst, they are filled with banter about Austin Powers, the parent being a "tire kicker," and an apparently sarcastic comment from Ernst that "Everyone want to be on my team.  I am just so honored and flattered! Gushing with pride!  Trophies for everyone!"  *Id.*  In yet another example, Ernst emailed the director of athletics about messaging to a parent who wanted to fund a van for the tennis team, which the team was declining.  Ex. CP.  Ernst wrote that he was going to tell the parent to "leave

the van and the gun, take the cannolis.  And then I'm gonna make him an offer he can't refuse."

*Id.*  These statements lack any indicia that they are business records.

### j.   The Defendant Should Not Be Permitted to Cross-Examine Government Witnesses or Introduce Exhibits on Matters Beyond the Scope of the Direct Examination.

The defendant has listed two of the government's witnesses, Matthew DeGreeff and

Michael Fried, on his witness list.  At the May 23, 2022 pretrial conference, defense counsel

indicated that he anticipated lengthy cross-examinations of other government witnesses,

including Timothy Donovan and Margaret Lysy, at two or more times the length of the

government's anticipated direct examination.

Cross-examination of a witness "should not go beyond the subject matter of the direct

examination and matters affecting the witness's credibility."  Fed. R. Evid. 611(b); *see also*

*Alford v. United States*, 282 U.S. 687, 694 (1931).  No good cause exists here to allow the

defense to go beyond the scope of the direct examination, rather than re-calling witnesses after

the government rests, because each of the witnesses identified above is local, with the furthest

being only two hours from Boston.  In contrast, allowing the defense to inquire into subject

matters not raised on direct examination may confuse the jury.  *See, e.g.*, *United States v.*

*Southers*, 583 F.2d 1302, 1309 (5th Cir. 1978) (affirming district court's limitation on scope of

cross-examination to avoid confusing the jury); *see also United States v. Shea*, 211 F.3d 658, 671

(1st Cir. 2000) (right of cross-examination is important, but it "can be reasonably limited for all

kinds of reasons").

Should the Court allow the defense to cross-examine government witnesses on matters

outside the scope of the direct examination, the defense may not be permitted to ask leading

questions.  Fed. R. Evid. 611(b) ("The court may allow inquiry into additional matters *as if on direct examination*.") (emphasis added).

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: */s/ Christopher J. Markham*
CHRISTOPHER J. MARKHAM
KRISTEN A. KEARNEY
Assistant United States Attorneys

CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

Dated:  June 1, 2022                    By:     */s/ Christopher J. Markham*
CHRISTOPHER J. MARKHAM
Assistant United States Attorney

17