

ROY BLACK, *Partner*
305.371.6421 (Office)
rblack@royblack.com

June 2, 2022

**Via ECF**

Honorable Patti B. Saris
United States District Judge
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

      Re:   ***United States* v. *Amin Khoury***
                **Case No. 1:20-cr-10177-PBS**

Dear Judge Saris:

      On behalf of defendant Amin C. Khoury, we request that the Court allow the parties to defer the exercise of any cause and peremptory challenges until a second day of jury selection, after the names and questionnaire responses of the venirepersons have been disclosed to the parties. The reason for this request is to allow for the parties to conduct an overnight review of jurors' responses to juror questionnaires, as well as to perform any necessary background research on potential jurors, and evaluate potential challenges and strikes.

      Considered the "largest-ever college admissions conspiracy prosecuted by the Justice Department,"[1] which indicted celebrities, company founders, presidents, CEOs, and other high-profile defendants, the "Varsity Blues" cases have spurred a documentary (Netflix's *Operation Varsity Blues: The College Admissions Scandal*), a television film (Lifetime's *The College Admissions Scandal*), a non-fiction book (Nicole LaPorte's

---

[1] "Felicity Huffman released on bail after allegedly bribing to get kid into college as part of sweeping admissions scandal," *USA Today* (Mar. 12, 2019), *available at* https://www.usatoday.com/story/life/2019/03/12/felicity-huffman-lori-loughlin-indicted-admissions-bribery-case-reports/3139204002/.

Hon. Patti B. Saris
June 2, 2022
Page 2

_____

*Guilty Admissions: The Bribes, Favors, and Phonies Behind the College Cheating Scandal*), and a fictionalized novel loosely based on the events of the alleged conspiracy (Julie Buxbaum's *Admissions*).  Coverage on the "Varsity Blues" cases in the local Boston media (*e.g.,* The Boston Globe, Boston Herald, NBC Boston, WHDH 7, and Metro Boston) has also been extensive, with over 1,000 articles published to date.[2]  Articles about Mr. Khoury have been overwhelmingly negative, as have the reader comments posted to these articles that specifically discuss Mr. Khoury's case (*i.e.,* "[f]or $200,000 I would have had Daddy buy me a Ferrari and I would have commuted to Cape Cod Community College.  I could have been Captain of the School's Club Tennis Team).  Georgetown is going to look a little different to Daddy through the lens of a Federal Prison"[3] or "[w]ow what an embarrassment to Khory's [sic] dad and grandfather of his incompetent stupid granddaughter . . . ."[4]).  In light of the pervasive coverage of this case, it is imperative that the Court allow the parties sufficient time to evaluate potential jurors' knowledge of the matter and potential bias against the Defendant, which cannot be done in a single day.

Other high-profile cases in this Court have allowed the parties at least one night to review written responses to juror questionnaires and conduct research on potential jurors.  For example, in 2013, U.S. District Court Judge Denise J. Casper postponed opening arguments in James "Whitey" Bulger's trial because she wanted to give prosecutors and Mr. Bulger's defense team "additional time" to review the juror questionnaires.[5]  In the 2014 criminal case before U.S. District Court Judge William Young against the former commissioner of the Massachusetts Probation Service, John O'Brien, and his deputies, Elizabeth Tavares and William

---

[2] Dkt. 136 (Defendant's Memo of Law ISO Motion to Utilize a Written Juror Questionnaire) at 2.

[3] "Mashpee man charged in college admissions bribery scandal," *Boston Herald* (Sept. 2, 2020), *available at* https://www.bostonherald.com/2020/09/02/mashpee-man-charged-in-college-admissions-bribery-scandal/.

[4] *Id.*

[5] "Fed judge postpones opening arguments in Whitey murder trial," *Boston Herald* (June 5, 2013), *available at* https://www.bostonherald.com/2013/06/05/fed-judge-postpones-opening-arguments-in-whitey-murder-trial/.



Hon. Patti B. Saris
June 2, 2022
Page 3

_____

Burke, prosecutors asked permission to conduct criminal background checks on potential jurors, arguing that background checks were important to assure a fair trial and prevent problems from cropping up on appeal.[6] Jury selection spanned over three days after the jury completed the questionnaires.[7] In the 2015 trial of Boston Marathon bomber Dzhokhar Tsarnaev, jury selection spanned two months.[8] But even this was not sufficient to uncover all juror bias. In July 2020, the First Circuit overturned Tsarnaev's death sentence because, due to the significant pretrial publicity surrounding the high-profile case, the trial judge "fell short" in screening jurors for potential bias during jury selection.[9] It is therefore clear that in high-profile cases, Courts in this District are willing to give additional time for jury selection, recognizing the heightened need to uncover juror bias.

Outside of the District of Massachusetts, the parties in several other high-profile cases have also received at least one night to review the responses to juror questionnaires. These include ex-NFL star Aaron Hernandez's 2017 criminal trial in Suffolk Superior Court, where jury out"[10]; Elizabeth Holmes' trial in the Northern District of California, where

---

[6] "Jury Selection Begins in Job-Rigging Trial of Former Probation Commissioner," *CBS News Boston* (May 5, 2014), *available at* https://www.cbsnews.com/boston/news/jury-selection-begins-in-job-rigging-trial-of-former-probation-commissioner/.

[7] "Jury chosen in ex-probation commissioner John O'Brien's racketeering case in Boston federal court," *MassLive* (May 7, 2014), *available at* https://www.masslive.com/politics/2014/05/jury_is_chosen_in_probation_co.html.

[8] "Boston Bombing Trial: 10 Women, 8 Men Selected as Jurors," *NBC News* (Mar. 3, 2015), *available at* https://www.nbcnews.com/news/crime-courts/boston-bombing-trial-10-women-8-men-selected-jurors-n316576.

[9] "Boston Marathon bomber Dzhokhar Tsarnaev's death sentence overturned by appeals court," *Reuters* (July 31, 2020), *available at* https://www.reuters.com/article/us-boston-bombings-appeal/boston-marathon-bomber-dzhokhar-tsarnaevs-death-sentence-overturned-by-appeals-court-idUSKCN24W2XN.

[10] "Jury selection proceeds for Avenatti-Stormy Daniels trial," *ABC News* (Jan. 21, 2022), *available at* https://abcnews.go.com/Politics/wireStory/jury-selection-proceeds-avenatti-stormy-daniels-trial-82385040.



Hon. Patti B. Saris
June 2, 2022
Page 4

_____

selection spanned over a week;[11] Michael Avenatti's 2020[12] *and* 2022[13] criminal trials in the Southern District of New York, with jury selection for the latter "hit[ting] full stride a week after written questionnaires were filled jury selection spanned three days;[14] and Ramesh "Sunny" Balwani's trial, also in the Northern District of California, where jury selection also spanned three days.[15]  It is worth noting that for the Balwani pool, multiple jurors were excused for closely following the media coverage of the Holmes' trial—leading to an even more narrow pool of potential jurors.[16]

Mr. Khoury is concerned that prejudicial coverage from the other Varsity Blues defendants tried in this District may have a spillover effect and unfavorably taint how prospective jurors view Mr. Khoury.  Limiting jury selection to less than one full day hinders the ability of the parties to

---

[11] "Jury selection underway in Aaron Hernandez's double murder trial," *Boston 25 News* (Feb. 14, 2017), *available at* https://www.boston25news.com/news/jury-selection-to-begin-in-aaron-hernandezs-latest-murder-trial/493979380/ and "Jury Selected In Aaron Hernandez Double Murder Trial," *CBS News* (Feb. 27, 2017), *available at* https://www.cbsnews.com/boston/news/jury-selection-complete-aaron-hernandez-double-murder-trial/.

[12] "Jury selection continues in Michael Avenatti's Nike trial," *AP News* (Jan. 28, 2020), *available at* https://apnews.com/article/3aeaaef9f5b903e5490e3a9434709017.

[13] "Judge in Avenatti-Stormy Daniels trial warns would-be jurors," *ABC News* (Jan. 13, 2022), *available at* https://abcnews.go.com/US/wireStory/judge-avenatti-stormy-daniels-trial-warns-jurors-82251361.

[14] "A glimpse inside the jury selection for Theranos founder Elizabeth Holmes' trial," *ABC News* (Sept. 7, 2021), *available at* https://abcnews.go.com/US/glimpse-inside-jury-selection-theranos-founder-elizabeth-holmes/story?id=79864426.

[15] "Trial of Theranos executive Sunny Balwani delayed by COVID scare, jury selection problems," *Palo Alto Online* (Mar. 16, 2022), *available at* https://www.paloaltoonline.com/news/2022/03/16/trial-of-theranos-executive-sunny-balwani-beset-by-jury-selection-problems#:~:text=The%20government%20withdrew%20the%2012th,six%20alternates%20had%20been%20selected.

[16] "Media Exposure to Holmes Trial Narrows Balwani Jury Pool," *Law360* (Mar. 10, 2022), *available at* https://www.law360.com/articles/1472593/media-exposure-to-holmes-trial-narrows-balwani-jury-pool.



Hon. Patti B. Saris
June 2, 2022
Page 5

_____

uncover juror bias by conducting overnight research.  In the only other two Varsity Blues cases to go to trial, the Court permitted overnight review of written responses to juror questionnaires.  In *U.S. v. Wilson and Abdelaziz*, the jurors filed out questionnaires and counsel were given copies of the responses "in time to review them over night to determine whether or not you have some reason to object to their continuing to sit as jurors."  *See* Ex. A (*U.S. v. Wilson and Abdelaziz*, Case No. 1-19-CR-10080 (D. Mass.)), Final Pretrial Conference Tr. at 42:12-15.  This procedure was preferable not only to the defendants, but also to the prosecution, which indicated it would use the time overnight to "run criminal history checks on those jurors, provided [the Government] share results."  *Id.* at 46:8-11.  Judge Gorton agreed with that plan, stating, "I would think both sides may want to do that.  I think that's the concern of all counsel.  They'd like to have a little time to run that information."  *Id.* at 46:12-14.  The Court allowed the parties overnight to run criminal background checks on the jurors even though the written questionnaire asked about criminal history;[17] in other words, in such a high-profile case, the parties were not obligated to accept the jurors' responses on their questionnaires at face value.  And, likewise in *U.S. v. Vavic*, the trial was adjourned for the day after the jurors completed their questionnaires.  *U.S. v. Vavic*, Case No. 1:19-cr-10081 (D. Mass.), Dkt. 1139.

In *Vavic*, the Government disclosed that it was planning to run criminal background checks on the potential jurors.  The Government represented to the Court that when it had run background checks in the *Wilson/Abdelaziz* trial, it discovered that several potential jurors had lied about their criminal histories.  Judge Talwani, presiding over the *Vavic* trial, permitted the Government to run the checks with the condition that the Government contemporaneously provide all materials to the defendant that it retrieved from law enforcement or other databases to which the defendant did not have access.

---

[17] *See U.S. v. Wilson and Abdelaziz*, Case No. 1-19-CR-10080 (D. Mass.), Dkt. 2131 (Question 31, "Have you, a relative, a close friend, and/or anyone you live with ever been arrested for, charged with, or convicted of an offense other than a simple traffic violation?  If yes, what was the crime?  Was it a felony or misdemeanor?  What punishment did you (or someone else) receive (including probation)?").



Hon. Patti B. Saris
June 2, 2022
Page 6

_____

Careful consideration of jurors' responses to juror questionnaires—as well as to their responses during voir dire—is imperative to ensure the Defendant receives a fair trial. "'All would agree that an impartial jury is an integral component of a fair trial' and must be 'jealously safeguarded.'" *Sampson v. United States*, 724 F.3d 150, 160 (1st Cir. 2013) (quoting *Neron v. Tierney*, 841 F.2d 1197, 1200-01 (1st Cir. 1988)). In *Sampson*, a juror failed to disclose information during voir dire in a capital murder penalty-phase trial. *Sampson*, 724 F.3d at 156. The juror was habitually dishonest during voir dire and, at an evidentiary hearing, had intense emotions when explaining the life experiences she had previously failed to disclose. *Id.* at 163. Furthermore, there were similarities between the juror's unreported life experiences and the evidence presented during the penalty-phase trial. *Id.* at 167. Following these revelations, the trial court ordered a new penalty-phase trial. *Id.* at 154. The First Circuit affirmed, finding that, had the trial court been armed with the knowledge of the juror's dishonesty, as well as the juror's reasons for their dishonesty, the court would have had a "valid basis" for excusing the juror for cause. *Id.* at 167-68. As a result, the six-week penalty phase trial was undone by the falsehoods of one juror during voir dire.[18] In the *Sampson* case, in

---

[18] Juror research during voir dire in other high-profile criminal trials has uncovered disqualifying background information that was not disclosed by jurors. For example, in Harvey Weinstein's 2020 criminal trial, overnight research allowed the defense team to uncover that a prospective juror had authored a soon-to-be released book titled "Age of Consent[,]" which dealt with a nearly-identical subject matter to that which was considered at trial—something the juror did not disclose in her written questionnaire. *See* "Weinstein Defense Team: 'Flawed Jury Selection Process' Will Be Focus of Appeal," *New York State Bar Association* (Sept. 9, 2020), *available at* https://nysba.org/weinstein-defense-team-flawed-jury-selection-process-will-be-focus-of-appeal/. Overnight research in the Weinstein case also allowed the defense to uncover that a prospective juror had tweeted, "[i]f anyone knows how a person might hypothetically leverage serving on the jury of a high-profile case to promote their new novel . . . dm me, please." After the defense alerted the court of their findings, the court instructed the prospective juror to retain a lawyer, return to the courtroom at a later date, and be ready to argue why he should not be found in contempt. The juror was told he faced a fine and up to 30 days in jail. *See* "Weinstein Judge Lectures Would-be Juror Over Bad



Hon. Patti B. Saris
June 2, 2022
Page 7

_____

which the death penalty required a unanimous verdict, just as the one required here, the Court stated: "**If even a single biased juror participates** in the imposition of the death sentence, **the sentence is infirm** and cannot be executed." *Id* at 163 (emphasis added). In light of the high profile of this case, Defense counsel requires overnight to review jurors' responses to juror questionnaires and conduct background research on jurors.

Massachusetts state courts, the American Bar Association, and other bar associations across the country recognize the necessity of adequate time to review jurors' responses to juror questionnaires and conduct background research. For instance, the "Best Practices for Jury Selection," which was endorsed by Justices of the Massachusetts Supreme Judicial Court, suggested that jury selection should "be neither unnecessarily lengthy nor unreasonably expedited," but should give attorneys "sufficient time to reflect with care on the juror responses to voir dire" and sufficient "time to permit adequate review of [any juror questionnaires] before empanelment."[19]

_____

Tweet," *Variety* (Mar. 10, 2020), https://variety.com/2020/biz/news/harvey-weinstein-juror-howard-mittelmark-tweet-court-judge-1203528690/. In addition, in Michael Avenatti's 2020 criminal trial, the defense uncovered, through overnight research, that a prospective juror had extensive connections with the corporate victim in the case, Nike. The defense's background research revealed the juror had hundreds of posts on his Facebook and Twitter referencing Nike in a positive way—all of which were presented to the court. This led to the juror being dismissed for cause after the judge remarked, "[h]aving said all that, there are too many connections between him and Nike such that I'm not comfortable with him being on the jury." *See* Ex. B (*U.S. v. Avenatti*, 19-CR-373 (S.D.N.Y.)), Jan. 20, 2020 Trial Tr. at 387:2-4. And in the criminal trial of Ghislaine Maxwell, a juror was excused for cause because, despite telling the court that he did not post to Twitter or post about current news events or politics (*see* Ex. C (*U.S. v. Maxwell*, 20-CR-330 (S.D.N.Y.)), Nov. 16, 2021 Trial Tr. at 155:1-6), overnight research revealed that both of these statements were false and that the juror had discussed sexual abuse allegations by a politician involving an underage victim of approximately the same age as the victims in the Maxwell case.

[19] "Best Practices for Jury Selection, Endorsed by the Justices of the Supreme Judicial Court" (July 20, 2016), *available at*



Hon. Patti B. Saris
June 2, 2022
Page 8

_____

Additionally, numerous bar associations have recognized that trial counsel has an ethical obligation to conduct background research on potential jurors. In 2014, the American Bar Association recognized the "strong public interest in identifying jurors who might be tainted by improper bias or prejudice," and therefore opined that it was proper for counsel to research "a juror's or potential juror's Internet presence, which may include postings by the juror or potential juror in advance of and during a trial. . . ." *See* Standing Committee on Ethics and Professional Responsibility, Formal Op. 466 at 1-2, Am. Bar Ass'n (2014). States within the First Circuit have adopted the ABA's Formal Opinion 466. For example, the Maine Board of Overseers of the Bar has affirmed that review of the juror's electronic social media by an attorney is permissive, provided that the review is "properly purposeful and not done to at all 'embarrass, delay, or burden a third person . . . .'"[20]

Some bar associations have opined that professional standards of competence and diligence may *require* such research. For example, the New York City Bar Association stated the following in Formal Opinion 2012-2:

> Just as the internet and social media appear to facilitate juror misconduct, the same tools have expanded an attorney's ability to conduct research on potential and sitting jurors, and clients now often expect that attorneys will conduct such research. Indeed, standards of competence and diligence may require doing everything reasonably possible to learn about the jurors who will sit in judgment on a case.

*See also* New York State Bar Association, Dec. 8, 2015 Report of the Social Media Committee of the Commercial and Federal Litigation Section, at 15

---

https://www.mass.gov/doc/statement-from-the-sjc-justices-regarding-best-practices-for-jury-selection/download.

[20] https://www.mebaroverseers.org/attorney_services/bar_notes.html?id=631643 (citing ABA Formal Op. 466; M. R. Prof. Conduct 4.4(a)).



Hon. Patti B. Saris
June 2, 2022
Page 9
_____

("[I]t is not only permissible for trial counsel to conduct Internet research on prospective jurors, but [] it may even be expected.").

Other courts have acknowledged that using the internet to conduct background research on prospective jurors is a "rudimentary practice" during jury selection. *United States v. Stone*, No. 19-0018 (ABJ), 2020 U.S. Dist. LEXIS 67359, at *93 (D.D.C. Apr. 16, 2020); *see also United States v. Parse*, 789 F.3d 83, 111 (2d Cir. 2015) (vacating conviction where "juror empaneled to hear the case . . . was not an impartial jury" because juror was found to have repeatedly lied during voir dire regarding her level of education, place of residence, criminal history, and other matters)*; Carino v. Muenzen*, No. A-5491-08T1, 2010 N.J. Super. Unpub. LEXIS 2154, at *27 (Super. Ct. App. Div. Aug. 30, 2010) (trial judge erred in preventing counsel from using the internet during jury selection). It is so routine that a party who fails to uncover disqualifying information about a potential juror, despite a reasonable opportunity to do so, risks waiving the right to use that information in post-conviction proceedings. *See Stone* at *90 (denying motion to vacate conviction and for a new trial because, *inter alia*, "the defense could have discovered the [foreperson's social media] posts as early as September 12, 2019, the day counsel received access to the completed juror questionnaires, including the foreperson's, which had her name printed legibly on the signature page.").

Accordingly, we ask that the Court allow the parties to defer exercise of any challenges until a second day of jury selection, after the names and questionnaire responses of the venirepersons have been disclosed to the parties. Doing so will give the parties a reasonable opportunity to conduct important background research so that Mr. Khoury's basic constitutional rights are preserved. Adding one extra day to these proceedings will not prejudice the prosecution, and the small delay, balanced against the importance of preserving Mr. Khoury's constitutional right to a fair and impartial jury, weighs in favor of allowing the parties to have the time overnight to conduct background research on the pool of potential jurors. It will also avoid the possibility of having to dismiss a juror after they have been seated, should background research reveal an issue that could have been addressed prior to selection of that juror.



Hon. Patti B. Saris
June 2, 2022
Page 10
_____

      We thank the Court for its consideration.

                              Respectfully yours,

                              Roy Black

cc:    Government Counsel
       (via ECF)

