# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> AMIN KHOURY, <br><br>                       Defendant | Case No. 20-cr-10177-PBS |

## DEFENDANT AMIN KHOURY'S MOTION FOR A JUDGMENT OF ACQUITTAL ON STATUTE-OF-LIMITATIONS GROUNDS

The September 1, 2020 Indictment against Defendant Amin Khoury alleges that Mr. Khoury conspired to commit mail fraud, honest services mail fraud, and bribery concerning programs receiving federal benefits (Count I) and committed bribery concerning programs receiving federal benefits (Count II). Each of these crimes has a five-year statute of limitations, meaning that at least one of the elements of each of the counts charged and at least one of the elements for each of the objects of the conspiracy charged in Count I must have occurred on or after September 1, 2015.

At the close of the government's case, no reasonable jury could find that any element of any of the counts charged occurred on or after September 1, 2015. Instead, if any of the crimes alleged occurred, they were complete before September 2015. Because the charges against Mr. Khoury are, therefore, time-barred, the Court must acquit Mr. Khoury on all counts, and all objects of the conspiracy charged in Count I.[1]

---

[1] In submitting this motion, Mr. Khoury reserves all rights to seek a judgment of acquittal on other grounds pursuant to Fed. R. Crim. P. 29(a) and (c), and renews the motion for judgment of acquittal he made through his counsel orally at the close of the government's case on June 10, 2022.

## BACKGROUND

### I.      Allegations in the Indictment

The Indictment (ECF No. 1) alleges that Mr. Khoury engaged in a conspiracy with Gordon Ernst, the head coach of men's and women's tennis at Georgetown, and Timothy Donovan ("Tennis Recruiter 1") to "commit mail fraud, honest services mail fraud and federal programs bribery … by bribing Ernst to fraudulently designate Khoury's daughter as a tennis recruit" at Georgetown and therefore obtain her admission to Georgetown. Indictment ¶¶ 4, 8, 10.  As to the mail fraud object of the conspiracy, the Indictment alleges that Mr. Khoury engaged in a scheme to defraud Georgetown of "admission to Georgetown." *Id.* ¶ 12(a).  As to the honest services fraud object of the conspiracy, the Indictment alleges that Mr. Khoury engaged in a scheme to defraud Georgetown "of its right to the honest and faithful services of its employee, Gordon Ernst." *Id.* ¶¶ 12(a)

The Indictment alleges the following timeline:

- In **May 2014**, Mr. Khoury "agreed to pay Ernst a bribe in the amount of approximately $200,000 in exchange for designating Mr. Khoury's daughter as a purported recruit to the Georgetown tennis team with little or no regard for her athletic ability." Indictment ¶ 10(a).

- In **July 2014**, Mr. Khoury emailed the director of college counseling at his daughter's high school and told him that he had told Ernst that his daughter "had the raw ability to lead the team if she was 'red-shirted' and if [Ernst] gave her the coaching that is required to advance a talented but raw kid into a varsity leader at the Georgetown level." Indictment ¶ 10(c).

- In **October 2014**, Mr. Khoury's daughter submitted her application to Georgetown with a letter of recommendation regarding her tennis *bona fides*. *Id*. ¶ 10(d). A few days later, Mr. Khoury emailed the director of college counseling letting him know that he had been in

touch with Mr. Ernst and that Mr. Ernst wanted "the application ASAP after quarter grades." *Id*. ¶ 10(e). Thereafter, "Ernst emailed a Georgetown admissions officer and identified Khoury's daughter as a potential tennis recruit," and later that month sent Mr. Khoury's daughter's grades and standardized test scores to the officer. *Id*. ¶ 10(f), (g). The Indictment alleges that when Mr. Ernst identified Mr. Khoury's daughter as a potential tennis recruit to the admissions officer, he did not disclose that he "had previously agreed to designate Khoury's daughter as a recruit in exchange for a bribe." *Id*. ¶ 10(f).

- In **November 2014**, Mr. Ernst gave Mr. Khoury guidance on how Mr. Khoury's daughter should proceed with an alumni interview for Georgetown. *Id*. ¶ 10(h).

- On or about **December 9, 2014**, Georgetown sent Mr. Khoury's daughter a "likely letter," indicating that "the Committee on Admissions had conducted an initial review of her application at Ernst's request and had rated her admission as 'likely,'" meaning that she had "a greater than 95 percent chance of being admitted to Georgetown" during the final decision phase in the spring. *Id*. ¶ 10(i).

- Sometime between **December 2014 and May 2015**, Mr. Khoury's daughter was accepted to Georgetown. *Id.* ¶ 10(j).

- On or about **May 8, 2015**, Mr. Khoury withdrew $200,000 in cash, and on or about **May 15, 2015**, met with Tennis Recruiter 1 in Massachusetts. *Id*. ¶ 10(j). He allegedly gave the recruiter approximately $180,000 in cash to give to Mr. Ernst, and an additional $20,000 for the recruiter. *Id.* ¶ 10(k). The recruiter gave $170,000 in cash to Mr. Ernst's spouse (keeping an extra $10,000 for himself) and then drove Mr. Ernst's spouse to a bank, where she rented a safe deposit box. *Id.* ¶ 10(m).

3

As to events after May 2015, the Indictment alleges sporadic communications between Mr. Khoury, Mr. Donovan, and Mr. Ernst between October 2015 and July 2016.  Specifically, the Indictment alleges as follows:

- In **October 2015**, Tennis Recruiter 1 texted Mr. Khoury "asking for an 'update' for Ernst concerning the money Khoury still owed Ernst." *Id*. ¶ 10(n).

- In **March 2016,** Tennis Recruiter 1 texted Mr. Khoury "to ask whether he would 'be in DC this spring to square things away with Gord?" *Id.* ¶ 10(o).

- In **June 2016**, Tennis Recruiter 1 texted Mr. Khoury, writing "Gord is asking again. When can you square up with him?" Mr. Khoury replied, "Have him give me a ring." *Id.* ¶ 10(p).

- On or about **July 15, 2016,** Mr. Ernst texted Mr. Khoury: "Amo, let's square up soon. My dad [is] very sick and I need to chip in and help my mom." *Id.* ¶ 10(q). Mr. Khoury responded: "Give me a few weeks and I can take another bite out of it. I'll say a prayer for your dad!!!"

- On or about **July 27, 2016**, Mr. Ernst and Mr. Khoury had a text message exchange in which they made plans to meet at a coffee shop, and Mr. Khoury "told Ernst he could 'take a small bite today' but 'not as big as the last.'" *Id.* ¶ 10(r).

## II.      The Evidence at Trial

Based on the evidence presented during the government's case, a jury could potentially find the following facts (articulated here solely for the purpose of this motion and not waiving any arguments to the contrary):

- Mr. Khoury's daughter submitted a formal application to Georgetown in the fall of 2014. *See* Ex. 14; Trial Tr. 3-223:12-17, 3-227:3-11.

- Mr. Khoury's daughter received a "likely letter" in December 2014 indicating that she had "a greater than 95 percent chance of being admitted to Georgetown." *See* Ex. 35; Trial Tr. 3:227:22-228:15.

- Mr. Khoury's daughter received a letter of acceptance to Georgetown dated March 26, 2015. *See* Ex. 38; Trial Tr. 3-228:22-229:12.

- Mr. Khoury met with Mr. Donovan ("Tennis Recruiter 1") in May 2015 and provided him with $200,000 in cash. Mr. Donovan took $20,000 of that cash for himself, and Mr. Khoury gave Mr. Donovan an additional $10,000. Mr. Donovan gave the remaining $170,000 to Mr. Ernst's wife. Trial Tr. 2-69:1-78:12.

- In April 2015, Mr. Khoury's daughter had an underage drinking incident which resulted in disciplinary action at her high school and a review of her candidacy for Georgetown because of the high school disciplinary action. *See* Ex. 150; Trial Tr. 3-48:20-49:10, 3-52:23-53:2, 3-54:4-15; Trial Tr. 4-9:23-10:15, 4-13:24-14:3. Matt DeGreeff, the Middlesex college counselor responsible for helping Middlesex students select and get accepted to a college, testified that after Mr. Khoury's daughter was notified on May 13, 2015 that her admission to Georgetown was confirmed and that she could still attend Georgetown in the fall, Mr. DeGreeff's "job was done." Trial Tr. 3-54:12-15.

- There were communications between Mr. Khoury, Mr. Donovan, and Mr. Ernst in 2016 regarding the giving of the remaining $30,000 to Mr. Ernst. Trial Tr. 2-78:20-2-82:18.

There is no evidence in the record that Mr. Khoury actually paid any additional amounts to Mr. Donovan or Mr. Ernst after May 2015. *See, e.g.*, Trial Tr. 2-114:21-115:4 (testimony from Mr. Donovan that he received a total of $30,000 from Mr. Khoury, the amount he had received as of May 2015; there was no testimony regarding anything received by Mr. Ernst after May 2015).

**LEGAL STANDARD**

Under Fed. R. Crim. P. 29(a), the court "must enter a judgment of acquittal" after the government closes its evidence if "the evidence is insufficient to sustain a conviction" on any offense.  Under Rule 29, a judgment of acquittal should be granted "when the evidence and all reasonable inferences to be drawn from the evidence, both taken in the light most favorable to the government, are insufficient for a rational factfinder to conclude that the prosecution has proven, beyond a reasonable doubt, each of the elements of the offense."  *United States v. Pimental*, 380 F.3d 575, 583 (1st Cir. 2004) (citations omitted).

Except as otherwise provided, "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."  18 U.S.C. § 3282(a).  Statutes of limitations for criminal offenses are to be interpreted liberally in favor of repose. *United States v. Habig*, 390 U.S. 222, 227 (1968).  "The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time," in order to "protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Toussie v. United States*, 397 U.S. 112, 114-15 (1970).

To assess the sufficiency of the evidence on a claim that the statute of limitations has run, the court "look[s] backward from the date of the … indictment and assess[es] whether the evidence, taken in the light most hospitable to the verdict, was such that the jury could reasonably have concluded that the conspiracy did not end until" five years before the date the indictment was returned or later.  *United States v. Upton*, 559 F.3d 3, 10 (1st Cir. 2009).

## ARGUMENT

### I.        Mr. Khoury's Motion Is Timely

Mr. Khoury's statute-of-limitations motion is timely because it is possible that the Indictment could be read to adequately plead facts to establish that the crime was within the limitations period, but no overt acts during the limitations period were proven at trial.  Where "[t]he indictment in this case adequately pleaded facts necessary to fulfill the statute of limitations requirement," Mr. Khoury is "permitted to raise his statute of limitations argument at trial, before the jury verdict, when he [has] heard the entire government case." *United States v. Upton*, 352 F. Supp. 2d 92, 96 (D. Mass. 2005) (Saris, J.), aff'd, 559 F.3d 3 (1st Cir. 2009).

### II.       Mr. Khoury Must Be Acquitted on the Mail Fraud Object of Count I

If any mail fraud conspiracy occurred, it was complete by March 2015, when Mr. Khoury's daughter obtained admission to Georgetown, or no later than May 2015, when Mr. Khoury's daughter's admission to Georgetown was confirmed following a disciplinary incident.

The statute of limitations period begins to run when the crime, as alleged, is complete. *See Toussie*, 397 U.S. at 115; *United States v. Venti*, 687 F.3d 501, 503 (1st Cir. 2012). The crime is complete "as soon as every element in the crime occurs." *Toussie*, 397 U.S. at 124 (White, J., dissenting).  For a conspiracy, "the crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement," because this determines "the duration of the conspiracy." *Grunewald v. United States*, 353 U.S. 391, 397 (1957). A conspiracy continues only while the co-conspirators endeavor to attain the "central criminal purposes" of the conspiracy. *Id.* at 401-402. Thus, "a conspiracy generally ends when the design to commit substantive misconduct ends; it does not continue beyond that point . . . after the central criminal purpose has been accomplished." *SEC v. Papa*, 555 F.3d 31, 36 n.3 (1st Cir. 2009) (quoting

*Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1117-18 (D.C. Cir. 1991)); *see also United States v. Torres Lopez*, 851 F.2d 520, 525 (1st Cir. 1988) (noting that a RICO conspiracy "continues as long as its purposes have neither been abandoned nor accomplished").

The alleged object of the mail fraud conspiracy is "admission to Georgetown."  Indictment ¶¶ 8, 12(a). The purpose here—"to facilitate the admission of Khoury's daughter to Georgetown" (Indictment ¶¶ 8, 10(j), 12(a))—was achieved in March 2015.  *See* Ex. 38; Trial Tr. 3-228:22-229:12.  Any mail fraud conspiracy thus came to an end at the time Mr. Khoury's daughter was admitted to Georgetown (the alleged "central criminal purpose" of the conspiracy).

The time-barred allegations against Mr. Khoury are similar to those asserted against one of the defendants in *United States v. Doherty*, 867 F.2d 47 (1st Cir. 1989), where that defendant: (1) received in advance a stolen copy of the exam required for promotion to sergeant; (2) took the exam; and (3) received a promotion to sergeant, all outside of the statute of limitations period. *Id.* at 60-62. The First Circuit (Breyer, J.) held that even though the defendant continued to receive a sergeant's salary within the limitations period, the conspiracy had come to an end and the charge was time-barred. In circumstances where the "payoff" or result of a conspiracy "merely consists of a lengthy, indefinite series of ordinary, typically noncriminal, unilateral actions" and "there is no evidence that any concerted activity posing the special societal dangers of conspiracy is still taking place," the Court concluded that a conspiracy is deemed to be at an end. *Id.* at 61; *see also United States v. Vega*, No. 88-473, 1989 U.S. Dist. LEXIS 6284, at *3, 6-7 (D.P.R. May 30, 1989) (dismissing indictment as time-barred where alleged ends of Hobbs Act conspiracy were accomplished before statute of limitations period; the alleged "conspiracy to affect commerce by extortion" was completed upon receipt of extorted funds; and the defendants' "ordinary noncriminal acts" to deposit funds after receipt were not part of the "central objective of the

conspiracy"). So too here, the evidence at trial at best showed sporadic communications between Mr. Khoury, Mr. Donovan, and Mr. Ernst regarding payment or giving of additional funds. However, any such payment was not necessary for the completion of a mail fraud conspiracy. The alleged unlawful result of the conspiracy—admission of Mr. Khoury's daughter to Georgetown, allegedly without full disclosure by Mr. Ernst of his reasons for designating her as a tennis recruit—was unaffected by any continuing communications that occurred. *See, e.g.*, *Fiswick v. United States*, 329 U.S. 211, 216 (1946) ("Though the result of a conspiracy may be continuing, the conspiracy does not thereby become a continuing one…. Continuity of action to produce the unlawful result, or . . . continuous cooperation of the conspirators to keep it up, is necessary." (internal quotation marks and citations omitted)).

Even if there were a reasonable inference that payment continued after May 2015 (which Mr. Khoury contends there is not), such further payment would not continue the conspiracy whose object was mail fraud—admission of Mr. Khoury's daughter to Georgetown as a tennis recruit— and which has already been achieved and completed. Any further payment to Mr. Ernst (of which there is no evidence in the record) would be the ***result*** of the conspiracy, not an ***overt act*** in furtherance of it. Again, "[t]hough the result of a conspiracy may be continuing, the conspiracy does not thereby become a continuing one." *Fiswick*, 329 U.S. at 216; *see United States v. Grimm*, 738 F.3d 498, 503 (2d Cir. 2013) ("[W]hen anticipated economic benefit continues, in a regular and ordinary course, well beyond the period 'when the unique threats to society posed by a conspiracy are present,' … the advantageous interest payment is the ***result*** of a completed conspiracy, and is not in furtherance of one that is ongoing." (citation omitted)).

Accordingly, Mr. Khoury must be acquitted on the mail fraud object of Count I because it is time-barred.

### III.    Mr. Khoury Must Be Acquitted on the Honest Services Fraud Object of Count I

The honest services fraud conspiracy alleged in Count I must be dismissed for the same reason.  The Indictment alleges that Mr. Khoury engaged in a scheme to defraud Georgetown of the intangible right to the honest services of its employee, Mr. Ernst, "by bribing Ernst to fraudulently designate Khoury's daughter as a tennis recruit."   Indictment ¶ 8.   "The principal purpose of the conspiracy was to facilitate the admission of Khoury's daughter to Georgetown." *Id.*

"A conspiracy conviction under 18 U.S.C. § 371 requires proof that the defendant agreed to commit an unlawful act and voluntarily participated in the conspiracy, and that an overt act was committed in furtherance of the conspiracy." *United States v. McDonough*, 727 F.3d 143, 156 (1st Cir. 2013).  Mr. Khoury's daughter was admitted to Georgetown, allegedly as a tennis recruit, in March 2015.  *See* Ex. 38; Trial Tr. 3-228:22-229:12.  Mr. Khoury gave Mr. Ernst $170,000 in May 2015.  Trial Tr. 2-69:1-78:12.  *If* the jury believes that Mr. Khoury and Mr. Ernst formed an agreement to defraud Georgetown of its right to Mr. Ernst's honest services, and agreed that Mr. Ernst would violate his fiduciary duty by designating Mr. Khoury's daughter as a tennis recruit in exchange for a bribe, that agreement and Mr. Khoury's participation in it would have had to occur before May 2015 at the latest.  By that point, *if* the government's narrative is correct (which Mr. Khoury contends it is not), Mr. Ernst would have taken at least one overt act in furtherance of the conspiracy: violating his fiduciary duty by designating Mr. Khoury's daughter as a tennis recruit in the fall of 2014, before she received her "likely letter" in December 2014.  *See* Ex. 35; Trial Tr. 3:227:22-228:15.  There is nothing further in the record of any breach of fiduciary duty by Mr. Ernst after May 2015, and no basis on which a reasonable jury could find that an overt act in furtherance of the conspiracy occurred after May 2015.  This is because, if there was any

conspiracy at all, it was complete by May 2015 because the object of the conspiracy—admission of Mr. Khoury's daughter to Georgetown—was achieved. *See Papa*, 555 F.3d at 36 n.3; *Torres Lopez*, 851 F.2d at 525. Even if payment of a bribe were actually required for completion of an honest services mail fraud conspiracy, that too was allegedly accomplished by May 2015. Thus, by May 2015, any alleged conspiracy (if any such conspiracy existed at all) would have been complete.

The claim that Mr. Khoury did not give the full amount of the alleged bribe in May 2015, and that Mr. Khoury communicated with Mr. Donovan and Mr. Ernst about further payment after May 2015, does not change the fact that the charged crime itself—*conspiracy* to commit honest services mail fraud—was complete by that point. There is no evidence in the record of any further payment to Mr. Donovan or Mr. Ernst after May 2015, and as noted above, any further payment would be the **result** of the conspiracy, not an **overt act** in furtherance of it. *See Fiswick*, 329 U.S. at 216; *Grimm*, 738 F.3d at 503. A conspiracy endures only "as long as the co-conspirators endeavor to attain the 'central criminal purposes' of the conspiracy." *Upton*, 559 F.3d at 10 (quoting *Grunewald*, 353 U.S. at 401). Where the central criminal purpose—admission to Georgetown—had been achieved by May 2015, the conspiracy was over, and no acts could occur in furtherance of it thereafter. Accordingly, Mr. Khoury must be acquitted on the honest services mail fraud object of Count I because it is time-barred.

## IV. Mr. Khoury Must Be Acquitted on the Federal Programs Bribery Object of Count I and the Federal Programs Bribery Charge of Count II

To prove a violation of 18 U.S.C. § 666(a)(2), the government must prove that Mr. Khoury "corruptly [gave], offer[ed], or agree[d] to give anything of value" to Mr. Ernst with the "intent to influence or reward" Mr. Ernst "in connection with any business, transaction, or series of transactions" of Georgetown "involving anything of value of $5,000 or more." 18 U.S.C.

§ 666(a)(2).[2]   To prove a conspiracy to commit federal programs bribery, the government must prove that "the defendant agreed to commit an unlawful act and voluntarily participated in the conspiracy, and that an overt act was committed in furtherance of the conspiracy." *McDonough*, 727 F.3d at 156.   There is no evidence of any payment or gift to Mr. Ernst after May 2015; the only evidence in the record of any giving of anything of value by Mr. Khoury to Mr. Ernst is in May 2015. *See, e.g.*, Trial Tr. 2-69:1-78:12, 2-114:21-115:4. ***If*** the jury believes that Mr. Khoury formed an agreement to pay Mr. Ernst with the intent to influence him in connection with his designation of Mr. Khoury's daughter as a tennis recruit, and ***if*** Mr. Khoury had the requisite intent, that agreement (if it existed at all) must have been reached before May 2015, when Mr. Khoury allegedly paid Mr. Ernst.[3]   And ***if*** the jury believes that Mr. Khoury corruptly gave, offered, or agreed to give Mr. Ernst something of value, Mr. Khoury must have done so by no later than May 2015.

Again, whether Mr. Khoury paid or intended to pay anything after May 2015 is irrelevant. Even if there were evidence in the record of such a payment—which there is not—no more money needed to change hands after May 2015 in order for the relevant elements of the alleged federal programs bribery conspiracy or the alleged federal programs bribery charge to be satisfied.   Neither the conspiracy statute nor the federal programs bribery statute require that a specific promised amount be paid before the alleged crime is completed.   Instead, 18 U.S.C. § 666(a)(2) requires an

---

[2] The government must also prove that Mr. Ernst was an agent of Georgetown, and that Georgetown is an organization that "receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." 18 U.S.C.§ 666(b). These elements of the Section 666 charge are essential, and Mr. Khoury submits that they have not been proven by the government, but they are not relevant to the issue presented by this motion.

[3] Of course, Mr. Khoury's giving of $170,000 to Mr. Ernst is not subject to Section 666 because that statute criminalizes only bribes, not "gratuities." *See United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013). Mr. Khoury assumes only for the purpose of this statute-of-limitations argument that the evidence is sufficient for the jury to find that Mr. Khoury agreed to an illegal *quid pro quo*. Mr. Khoury reserves all rights to argue otherwise.

offer, agreement, or giving of "anything of value," and 18 U.S.C. § 371 requires only an agreement to engage in federal programs bribery.[4]

Accordingly, Mr. Khoury must be acquitted on the federal programs bribery object of Count I and the federal programs bribery charge of Count II because they are time-barred.

## CONCLUSION

Mr. Khoury respectfully requests that the Court enter a judgment of acquittal on Counts I and II, and on all objects of Count I, because the government has not proven that at least one of the elements of any of the objects of Count I, or of Count II, was satisfied on or after September 1, 2015, and thus the charges in the September 1, 2020 Indictment are time-barred.

Respectfully submitted,

AMIN KHOURY,

By his attorneys,

/s/ Eóin P. Beirne

| | |
|---|---|
| Roy Black (*pro hac vice*) | R. Robert Popeo (BBO #403360) |
| Howard Srebnick (*pro hac vice*) | Eóin P. Beirne (BBO #660885) |
| BLACK SREBNICK | Mathilda S. McGee-Tubb (BBO #687434) |
| 201 South Biscayne Boulevard | MINTZ, LEVIN, COHN, FERRIS, |
| Suite 1300 | GLOVSKY AND POPEO, P.C. |
| Miami, FL 33131 | One Financial Center |
| (305) 371-6421 | Boston, MA 02111 |
| rblack@royblack.com | (617) 542-6000 |
| hsrebnick@royblack.com | RRPopeo@mintz.com |
| | EPBeirne@mintz.com |
| | MSMcGee-Tubb@mintz.com |

Dated: June 13, 2022

---

[4] Moreover, Congress has not defined Section 666 as a "continuing offense" and, following *Toussie*, at least one federal appeals court has rejected government efforts to categorize Section 666 as such. *See United States v. Yashar*, 166 F.3d 873 (7th Cir. 1999).

## <u>CERTIFICATE OF SERVICE</u>

I, Eóin P. Beirne, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 13, 2022.

/s/ *Eóin P. Beirne*
Eóin P. Beirne